1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10  CARL ZEISS VISION INTERNATIONAL          Civil No.    07-cv-0894-DMS (POR)
    GMBH; CARL ZEISS VISION INC,
11
                              Plaintiffs,    **ORDER GRANTING IN PART AND
12                                           DENYING IN PART JOINT
              v.                             DISCOVERY MOTION**
13
    SIGNET ARMORLITE INC,                    **[Doc. 403]**
14
                              Defendant.
15
16          On October 2, 2009, the parties submitted a Joint Discovery Conference Statement ("JDCS")

17  and separate Memoranda of Points and Authorities addressing whether Carl Zeiss Vision ("Zeiss")

18  must produce the following categories of documents:

19          (1)     patent clearance opinions regarding the patents in suit;

20          (2)     monthly memoranda from Plaintiffs' patent review committee meetings;

21          (3)     documents on privilege log that do not identify the involvement of an

22                  attorney; and

23          (4)     documents on privilege log that list third-party recipients.

24  Pursuant to Court order [Doc. 402], the JDCS has been filed under seal and construed as a Discovery

25  Motion [Doc. 403].  Upon thorough review of the parties' papers, the Court addresses below

26  whether each category of documents is discoverable.[1]

27  _____

28          [1] The parties tailored the JDCS to address four categories of the documents, rather than
    individual interrogatories and document requests.  In order to fully address the parties' arguments, the
    Court will conduct its analysis under the same categorical framework.

**DISCUSSION**

**I.      Patent Clearance Opinions**

Signet Armorlite ("Signet") seeks production of the clearance opinions that attorney Samuel C. Miller provided to Sola International, Inc., between 2000 and 2004, relating to the '713 patent in suit and the '470 Seiko patent.  Furthermore, Signet wants all documents related to the same subject matter.

A.  Relevance

Signet argues that the documents are relevant, stating that attorney Miller's clearance opinions on the patents' validity likely contradict claims asserted by Zeiss and prove defenses and counterclaims set forth by Signet.  Aside from characterizing Signet's argument as "pure speculation," Zeiss does not brief the issue of relevance.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Relevant evidence is defined as that which is "reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).  Furthermore, in patent cases, the scope of discovery "should be liberally construed" under Federal Rule of Civil Procedure 26(b)(1).  See Bd. of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys.. Inc., 237 F.R.D. 618, 621 (N.D.Cal.2006) (compelling production of documents under Rule 26 in patent infringement action).

The clearance opinions are relevant.  According to Signet, "Zeiss cannot plead that Signet Armorlite behaved in an objectively unreasonable manner if Zeiss' trial counsel gave Sola a green light to proceed in view of the '713 patent . . . or if the opinion states that the technology Signet licensed from Seiko under the '470 patent is also within the prior art."  (Sig. Br. at 5.)  Rule 26 does not require certainty that the document request will yield admissible evidence, but rather, the request need only be "reasonably calculated" to produce admissible evidence.  Although Signet has not seen the contents of the clearance opinions, it is reasonable to believe that the opinions contain an evaluation of the patents' validity.  Thus, at a minimum, an evaluation of the patents' validity would be probative of whether "the [alleged] infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  In re Seagate Technology, LLC, 497 F.3d 1360,

1    1371 (Fed. Cir. 2007)(stating what plaintiff must show in order to establish a willful infringement

2    claim)(emphasis added).  Accordingly, the clearance opinions are relevant within the meaning of

3    Rule 26(b)(1).

4         B.  Privilege

5         Next, the Court must address whether the attorney-client privilege protects the clearance

6    opinions from disclosure.  As a threshold matter, the Court must "apply Federal Circuit law in

7    determining whether the attorney-client privilege applies," because the clearance opinions implicate

8    a "substantive patent issue."  In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803-04 (Fed. Cir.

9    2000); see also In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006).  Under

10   Federal Circuit precedent, the "attorney-client privilege protects the confidentiality of

11   communications between attorney and client made for the purpose of obtaining legal advice."

12   Genentech, Inc. v. U.S. Intern. Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  The

13   deposition testimony of Karen Roberts, Zeiss's Rule 30(b)(6) witness, demonstrates that:  (1) around

14   2002, Sola became aware of the patents at issue; (2) Sola then contacted its attorneys for legal

15   advice on the patents; and (3) Sola received the legal advice from its attorneys, including the

16   clearance opinions authored by Samuel Miller, Esq.  (JDCS at 3.)  These facts, not contradicted by

17   Signet, indicate that Sola's clearance opinions derived from an attorney-client relationship and

18   involved confidential communications "made for the purpose of obtaining legal advice."  Genentech,

19   122 F.3d at 1415.  Thus, Sola has a right to assert the attorney-client privilege over the clearance

20   opinions.[2]  Furthermore, the subsequent merger between Sola and Zeiss transferred this

21   attorney-client privilege to the surviving corporation, Zeiss.  City of Rialto v. U.S. Dept. of Defense,

22   492 F. Supp. 2d 1193, 1201 (C.D.Cal. 2007); O'Leary v. Purcell Co., Inc., 108 F.R.D. 641, 644

23   (M.D.N.C. 1985).  As a result, the central issue becomes whether Zeiss has waived this privilege.

24

25

26        [2] According to the Federal Circuit:  "The law imposes an affirmative duty of due care to avoid

27   infringement of the known patent rights of others.  Usually, this duty includes seeking and obtaining
     competent legal advice before engaging in activity that may result in infringement." Electro Med. Sys.,

28   S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994).  In light of this duty, the
     Cooper Life Sciences court held that the recipient of this legal advice "had a right to assert the
     attorney-client privilege." Id..

C.  Waiver

The issue is whether Zeiss waived the attorney-client privilege by failing to identify the clearance opinions in its privilege logs.[3]  Under Federal Rule of Civil Procedure 26(b)(5):

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:  (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

More specifically, in the present case, the Court ordered Zeiss to produce a privilege log, which "shall describe the nature of the withheld documents, without disclosing their contents, with *sufficient particularity* that Defendant can challenge, and the Court can assess, the claim of privilege if there be such a need."  (Order, Nov. 14, 2007 [Doc. 40])(emphasis added).

Zeiss's identification of the clearance opinions in its privilege log is vague.  Zeiss's Fourth Supplemental Privilege Log, served May 15, 2009, contains multiple listings that identify Samuel Miller as "Author" and describe the Subject Matter as "Document [or Email] including confidential client information reflecting legal advice of counsel re: Group I [or II] patents."  (JDCS, Ex. C.) However, "Group I" represents numerous patents in addition to the '713 and '470 patents at issue in this case.  Furthermore, the privilege logs fail to identify Samuel Miller as Sola's outside I.P. counsel.  These vague listings prevent an effective identification of the clearance opinions.  For example, even though Zeiss's Rule 30(b)(6) witness testified from memory to the author, recipient, and timing of the clearance opinions, the witness was unable to locate an entry for the clearance opinions anywhere in Zeiss's privilege logs.  Thus, the privilege logs fail to identify the clearance opinions with "sufficient particularity."

Even if the identification of the clearance opinions in the privilege logs was sufficiently particular, the identification was untimely.  On July 23, 2008, the Court ordered that "[t]he parties

---

[3] Signet also argues that "[b]y pleading willful infringement, Zeiss has placed its withheld opinions in issue, impliedly waiving privilege" (Sig. Br. at 4), but the cited cases do not support this proposition.  To the contrary, the Federal Circuit opinion cited by Signet states that the waiver of the attorney-client privilege is only triggered when the privilege-holder relies on the "advice of counsel defense" to refute a charge of willful infringement.  In re Seagate Technology, LLC, 497 F.3d 1360, 1370 (Fed. Cir. 2007).  In the present case, Zeiss is not relying on the clearance opinions for any purpose.  Thus, under Seagate, waiver is not appropriate.

shall produce privilege logs relating to all documents which have been withheld from discovery in this case on or before August 1, 2008." [Doc. 107.] The Fourth Supplemental Privilege Log was the first privilege log to associate attorney Miller with correspondence during the time period of the clearance opinions, but Zeiss did not serve this privilege log to Signet until May 15, 2009. Moreover, Zeiss makes no claim that it was unaware of the clearance opinions prior to that date. Thus, Zeiss did not assert privilege over Miller's clearance opinions until more than 9 months after the deadline ordered by the Court.

Despite the deficiencies in the content and timing of Zeiss's privilege logs, however, Zeiss has not automatically waived the attorney-client privilege. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005)("reject[ing] the *per se* waiver rule" for privileges, as applied to deficient privilege logs). Instead, the Ninth Circuit has instructed the district courts to conduct a "holistic reasonableness analysis" through application of the following factors:

(1) degree to which the privilege log enables an evaluation of the privilege ("where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient");

(2) the timeliness of the privilege log ("where service within 30 days, as a default guideline, is sufficient");

(3) "the magnitude of the document production;" and

(4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard."

Id. at 1149. In Burlington, the Ninth Circuit upheld the district court's finding of waiver, but emphasized that (a) it was reviewing for "clear error as a matter of law;" (b) the first privilege log arrived 5 months late; (c) the party asserting privilege was "a sophisticated corporate litigant;" (d) a timely log would not have been burdensome; and (e) "the untimely logs failed to correlate specified documents with specific discovery requests." Id. at 1149-50 (internal quotations omitted).

In the present case, the factors do not weigh as heavily in favor of waiver. With respect to the first factor, the privilege logs list "legal advice of counsel re: Group I [or II] patents," which constitutes more than a "boilerplate objection." As U.S. Magistrate Judge Pitman concluded from his facial review of a privilege log:

07cv894

The vast majority of the remaining documents are identified as correspondence or e-mails seeking, transmitting or reflecting legal advice. . . . To require [the party] to disclose additional information would come perilously close to requiring disclosure of the substance of the privileged communication.

S.E.C. v. Beacon Hill Asset Mgmt. LLC, 231 F.R.D. 134, 144-45 (S.D.N.Y. 2004).  Zeiss not only specified "legal advice," but also stated the subject matter of the advice: "Group I [or II] Patents."  Thus, although Zeiss did not provide the "particulars" necessary to clearly identify the documents as clearance opinions, the description is sufficient to render the first factor neutral.

The second factor, timeliness, militates in favor of Signet.  The first privilege log that arguably identifies the clearance opinions–the Fourth Supplemental Log–arrived 9 months after the court–ordered deadline.

The third and fourth factors are more difficult to gauge.  For example, the "magnitude" of discovery in this case, like in many patent cases, is significant, but the Burlington court did not provide benchmarks for comparison.  Lastly, there is no evidence of circumstances affecting the parties' ability to respond to discovery.

In the wake of Burlington, two district courts in California, faced with procedural facts similar to the instant case, have taken a permissive stance on deficient privilege logs.  See e.g., U.S. v. Union Pac. R. Co., 2007 WL 1500551 (E.D.Cal. May 23, 2007); Humphreys v. Regents of the Univ. of Cal., 2006 WL 1409336 (N.D. Cal. May 23, 2006).  In Union Pacific, a "sophisticated corporation" submitted a series of supplemental privilege logs, which the opposing party claimed were deficient.  2007 WL 1500551 at *4.  The court "decline[d] to make a finding of waiver," even though "the most recent version submitted to the court still does not contain the requisite detail."  Id.  Similarly, in Humphreys, the defendant produced a privilege log that failed to sufficiently identify the documents.  2006 WL 14096336 at *1.  The court, however, declined to find that the privilege had been waived:

While the privilege log *lacks any sort of description of the subject of many of the documents*, the Court believes that the privilege log contains sufficient information to constitute a good faith effort at compliance with this Court's order.

Id. (emphasis added).  In light of the Union Pacific and Humphreys decisions, with respect to the clearance opinions, the Court finds that the deficiencies of Zeiss's privilege log do not justify a waiver of the attorney-client privilege.

1     D.  Conclusion

2          Based on the protections of the attorney-client privilege, Signet's motion to compel

3     production of the clearance opinions is DENIED.

4     **II.     Monthly Memoranda from Patent Review Committee Meetings**

5          Signet seeks production of the monthly meeting memoranda generated by Sola's and Zeiss's

6     patent review committees during the period 1997–2005.  In particular, Signet wants the documents

7     related to the '713 patent, the '470 patent, other potential prior art, and Sola's commercial products

8     allegedly covered by the '713 patent from Zeiss.

9          A.  Relevance

10         Signet argues the documents are "highly relevant to establish when Sola and Zeiss knew of

11    prior art to the '713 patent in suit and/or the licensed Seiko '470 patent," which relates to both

12    Zeiss's willful infringement claim and Signet's affirmative defenses.  (JDCS at 9.)  Although Zeiss

13    asserts that "Sola's knowledge of patents, before its merger into [Zeiss] . . . is irrelevant to any claim

14    or defense in this litigation" (JDCS at 9), Zeiss provides no support, and instead, addresses only the

15    issue of privilege in its brief.

16         B.  Privilege

17         In the context of communications made by employees of a corporation, the Supreme Court's

18    opinion in Upjohn Company v. United States provides the guiding principle for analyzing privilege.

19    449 U.S. 383 (1981).  When an employee makes statements to in-house counsel, the attorney-client

20    privilege attaches if the "communications at issue were made . . . at the direction of corporate

21    superiors *in order to secure legal advice from counsel*."  Id. at 394 (emphasis added).  Furthermore,

22    at least one court has extended the privilege to "communications between non-attorneys . . . so long

23    as the communications were made in confidence for the purpose of obtaining legal advice from

24    counsel."  Williams v. Sprint/United Mgmt. Co., 238 F.R.D. 633, 639 (D. Kan. 2006)(citing United

25    States v. Kovel, 296 F.2d 918 (2d Cir. 1961) and Eutectic Corp. v. Metco, Inc., 61 F.R.D. 35

26    (E.D.N.Y. 1973)).

27         Signet cites no cases to the contrary, but instead, argues that the monthly committee

28    meetings did not relate to procuring legal advice.  In support, Signet contends that: (a) 98 of the 118

1   meeting identifications (in the privilege log) fail to list an attorney as either attendee or recipient of

2   the meeting memoranda; and (b) of the remaining 20 listings, 15 were disclosed to third parties.

3   (Sig. Br. at 7.)  Furthermore, Signet accuses Zeiss's Rule 30(b)(6) witness of "concoct[ing] a

4   self-serving assertion that an Australian attorney delineated the Patent Review Committee process,

5   and that this somehow cloaked the entire function of the Committee with privilege." <u>Id.</u> at 8.  Thus,

6   Signet relies on case law holding that "routine, non-privileged communications between corporate

7   officers or employees transacting the general business of the company do not attain privileged status

8   solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." <u>F.C.</u>

9   <u>Cycles Intern., Inc. v. Fila Sport, S.p.A.</u>, 184 F.R.D. 64, 71 (D.Md. 1998).  In response, Zeiss

10   contends that the employees met "at the direction of corporate superiors and legal counsel to secure

11   information necessary to provide[sic] legal advice from counsel."  (Zeiss Br. at 6.)

12        The testimony of Ms. Roberts, Zeiss's Rule 30(b)(6) witness, describes how the committee

13   meetings related to the pursuit of legal advice:

14      Q:   Were any types of minutes or reports kept of the results of the monitoring of
              the back-surface progressive technology?

15

16      A:   There are minutes that are kept as part of the patent-review process that is
              used to identify opportunities for filing our own patents and to seek legal
              advice for areas relating to patents, where we might need to give some advice

17              to management.

18      Q:   How did that occur?  Who collected the patent literature?  How was it being
              assembled?  Where did it go?

19

20      A:   The general process was the collection of information [sic] would have been
              the responsibility of the person, for example, Saulius Varnas, to do a
              preliminary review and identify patents that may be of interest, and then bring

21              that to the attention of the patent-review committee, and they would decide
              whether . . . it was an area that we should seek legal advice on. . . .

22

23      Q:   Were there any attorneys on the committee?

      A:   We have attorneys who advise that committee.

24

25      Q:   . . .  I'm trying to understand the mechanism.  Was it a situation where Mr.
              Varnas would bring patents of interest into the committee, the committee
              would review the patents, and then there would be a determination made, [sic]

26              we're not going to go to the lawyers and see what they think about this?

27      A:   The process works more like that group is responsible for acting, I guess,
              from an administrative point of view gathering the information and making

28              the contact with the attorney to solicit the advice more so than reviewing the
              documents in any detail and identifying, you know, specific next steps or

advising management at that point.

Q:   Were there instances in which the committee would meet and there would be no information supplied to any lawyer?

A:   There could be instances where, for example, they had an action from a previous meeting to follow up on some IP-related matter and maybe just note that attorneys had been contacted and we were waiting for information.

(Zeiss Br., Ex. I at 37-39.)

Based on this testimony, the Court finds that the patent review committee met "in order to secure legal advice from counsel" within the meaning of Upjohn and its progeny.  Accordingly, the attorney-client privilege attaches to the memoranda of the committee's meetings.

C.  Waiver

Signet again argues that even if the attorney-client privilege attaches, Zeiss has waived the privilege due to an untimely submission of the privilege log.  Incorporating the analysis of waiver from Section I(C) above, the Court finds that the untimely privilege log does not justify a waiver of the attorney-client privilege in this case.

D.  Conclusion

Based on the protections of the attorney-client privilege, Signet's motion to compel production of the monthly memoranda from the patent review committee meetings is DENIED.

III.   **Documents Listed on Privilege Log Without Identification of Attorney Involvement**

Signet seeks production of the documents listed in Zeiss's privilege logs that "do not include an attorney as a recipient or author."  (JDCS at 10.)  The Court incorporates the legal analysis from Section II(B), above.  In addition, the Williams court concluded that the attorney-client privilege continues to apply to communications made for the purpose of obtaining legal advice, even if the communications were never sent to counsel.  Williams v. Sprint/United Mgmt. Co., 238 F.R.D. 633, 638 (D. Kan. 2006).  Thus, if the non-lawyers made the communications at the direction of superiors to obtain legal advice, the attorney-client privilege must attach.

In its brief, Zeiss states that "the entries involving non-lawyer individuals were communications made by Sola and Zeiss employees meeting at the direction of corporate superiors and legal counsel to secure information necessary to provide[sic] legal advice from counsel."  (Zeiss Br. at 8.)  However, Zeiss provides no support for this statement.  Accordingly, the Court hereby

ORDERS Zeiss to file a verified pleading clarifying the nature and purpose of the communications on or before **December 16, 2009**.  Based on the Zeiss's representations, the Court DENIES Signet's request for production WITHOUT PREJUDICE to resubmit the request after Zeiss's verified pleading has been received.

**IV.      Documents Listed on Privilege Log With Third-Party Recipients**

Signet seeks production of the documents listed in Zeiss's privilege log "that include an unrelated third party as a recipient."  (JDCS at 11.)

Disclosure of an attorney-client communication to a third party does not waive the privilege if the third person is "present to further the interest of the client in the consultation [of legal advice]."  Atmel Corp. v. St. Paul Fire & Marine Ins. Co., 409 F. Supp. 2d 1180, 1181 (N.D. Cal. 2005).  Zeiss states that the third parties listed at issue "were operating in the capacity of 'interpreters' of technical information at the request of attorneys in order to render informed legal advice."  (Zeiss Br. at 9.)  However, Zeiss has failed to provide any details or support for this assertion, and because *Zeiss did not raise this argument in the JDCS*, Signet was not able to respond.

Instead, Signet focused on the two issues raised by the JDCS:  (1) whether the misidentification of David Lewis triggers a waiver of the privilege; and (2) whether the employees of Micro Optics, the company with which Sola had a joint venture, are third parties.  According to Signet, the initial privilege log did not identify "D. Lewis" in any manner.  Subsequent privilege logs assigned "D. Lewis" two different names and positions: one was an employee of Sola, and the other was a third party.  Whereas Signet contends that the issue remains unresolved to date, Zeiss states that it has apologized for the misidentification and explained that David Lewis was a Sola employee until this year.[4]  Thus, David Lewis is not a third party.

With respect to the communications received by employees of Micro Optics, Zeiss argues that the joint venture vested Sola and Micro Optics with a "community of interest" privilege, citing Duplan Corp. v. Deering Miliken, Inc., 397 F. Supp. 1146 (D.S.C. 1975).  The Court finds this argument unpersuasive.  First, the privilege log does not make any mention of a joint venture.

---

[4] In support, Zeiss provides an email, dated August 18, 2009, in which Zeiss clearly communicated to Signet the relevant employment history for David Lewis.  (Zeiss Br., Ex. J.)

Second, the "community of interest" privilege does not apply to the present case.  In particular, a community of interest only exists if all of the following are true:  (1) the nature of both parties' interests are "identical, not similar;" (2) the nature of the common interest is "legal, not solely commercial;" and (3) "the communication must be shared with the *attorney* of the member of the community of interest."  In re Teleglobe Commc'ns Corp., 493 F.3d 345, 364-65 (3d Cir. 2007)(citing Duplan, 397 F. Supp. at 1172)(emphasis in original).  It is not clear how the two companies created an "identical" legal  interest; to the contrary, the existence of a loan agreement between Micro Optics and Sola suggests that their interests were potentially adverse.  Furthermore, the *employees* of the respective entities shared in the communications, not the *attorneys*.  Thus, the employees of Micro Optics are third parties, and as a result, communications received by these employees are stripped of the attorney-client privilege.

In conclusion, the Court GRANTS, in part, and DENIES, in part, Signet's motion to compel production of the Category 4 documents.  With respect to the documents received by David Lewis,[5] the Court denies Signet's motion to compel production.  However, Zeiss shall produce the documents listed on the privilege log received by employees of Micro Optics.

**V.      Signet's Request for Sanctions**

In its brief, Signet requests that the Court impose sanctions on Zeiss, including the dismissal of Zeiss's Complaint.  Based only upon the conduct alleged in the JDCS, the Court holds that sanctions are not warranted.  However, the Court will take Zeiss's conduct under advisement and consider it in conjunction with Signet's pending sanctions motions [Docs. 351, 374, 376, 379], scheduled for December 1, 2009, to be decided on the papers.

//

//

//

//

//

---

[5] In particular, the Court is referencing the privilege log entries that are highlighted yellow in Exhibit C to the JDCS.

**CONCLUSION**

On or before **December 16, 2009**, Zeiss shall produce both (1) the verified pleading, as described in Section III; and (2) the documents received by employees of Micro Optics.  No sanctions shall issue as a result of this dispute.

**IT IS SO ORDERED.**


**DATED:  December 1, 2009**

_____
**LOUISA S PORTER**
**United States Magistrate Judge**

cc   The Honorable Dana M. Sabraw
    All parties

07cv894