RICHARD A. SCHNURR, ARDC No. 6181372
Email: Richard.Schnurr@IceMiller.com
BRIAN J. LUM, ARDC No. 6256315
Email: Brian.Lum@IceMiller.com
**ICE MILLER LLP**
200 West Madison Street, Suite 3500
Chicago, IL 60606
Tel: 312-726-1567; Fax: 312-726-7102

JOHN C. WYNNE, SBN 83041
Email: Wynne@dsmwlaw.com
DOUGLAS W. LYTLE, SBN 178315
Email: Lytle@dsmwlaw.com
**DUCKOR SPRADLING METZGER & WYNNE**
A Law Corporation
3043 4th Avenue
San Diego, California 92103
Tel: 619-209-3000; Fax: 619-209-3043

Attorneys for Defendant/Counterclaimant
SIGNET ARMORLITE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ZEISS VISION INTERNATIONAL GMBH and CARL ZEISS VISION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SIGNET ARMORLITE, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 07 CV 0894 DMS (POR) <br> (Related Case No. 09 CV 0657 DMS (POR)) <br><br> SIGNET ARMORLITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM [F.R.C.P. 50(b)] <br><br> DATE: August 20, 2010 <br> TIME: 1:30 p.m. <br> DEPT: Courtroom 10 <br> JUDGE: Hon. Dana M. Sabraw <br><br> Action Filed: May 17, 2007 (07 CV 0894) <br> April 1, 2009 (09 CV 0657) <br> Trial Date: May 17, 2010 |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION .................................................................................................... 1

II. PROCEDURAL HISTORY ..................................................................................... 1

III. STANDARD FOR JUDGMENT AS A MATTER OF LAW ................................. 2

IV. THIS COURT SHOULD DETERMINE THAT ZEISS IS NOT ENTITLED TO THE PROTECTIONS OF *NOERR-PENNINGTON* AS A MATTER OF LAW. .............. 2

    A. The Litigation Conduct Exception to *Noerr-Pennington* Immunity. ..................... 4

    B. The Court Should Determine the Litigation Misconduct Exception to Noerr-Pennington Applies to Zeiss' Conduct. ......................................................... 6

    C. Zeiss' Known Lack of Standing Also Vitiates *Noerr-Pennington* Immunity. ........................................................................................................................ 9

V. THE COURT ALSO SHOULD ORDER A NEW TRIAL AS TO THE LANHAM ACT COUNTERCLAIM. ........................................................................................ 12

    A. A New Trial on the Lanham Act Counterclaim is Warranted Because a Mistrial Was Declared As to *Noerr-Pennington*, and the Lanham Act Jury Instructions Were Infused with Complicating and Duplicative *Noerr-Pennington* Immunity Language. ..................................................................... 12

    B. A New Trial on the Lanham Act is Further Warranted Because in the Absence of Noerr-Pennington Immunity, Zeiss' False Publications Establish Liability Under the Lanham Act, At a Minimum, for Injunctive Relief and Related Relief. ........................................................................................... 13

VI. CONCLUSION ........................................................................................................ 14

DUCKOR
SPRADLING
METZGER
& WYNNE

Case Nos. 07-CV-0984

i

410272.1

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Balance Dynamics Corp. v. Schmitt Indus.*
    204 F.3d 683 (6th Cir. 2000) .................................................................................... 14

*California Motor Transport Co. v. Trucking Unlimited*
    404 U.S. 508 (1972) ................................................................................................... 4

*Campagnolo S.r.L. v. Full Speed Ahead, Inc.*
    C08-1372 RSM, 2010 WL 1903431 (W.D. Wash. May 11, 2010) ......................... 14

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*
    690 F.2d 1240 (9th Cir. 1982) .................................................................................... 4

*Delano Farms Co. v. California Table Grape Comm'n*
    623 F. Supp. 2d 1144 (E.D. Cal. 2009) ..................................................................... 3

*Eastern Railroad v. Noerr Motor Freight*
    365 U.S. 1127 (1961) ................................................................................................. 2

*Hammond v. T.J. Litle & Co.*
    82 F.3d 1166 (1st Cir. 1996) ...................................................................................... 2

*Hirschfeld v. Spanakos*
    104 F.3d 16 (2nd Cir. 1997) ....................................................................................... 6

*In re Burlington Northern, Inc.*
    822 F.2d 518 (5th Cir. 1987) ........................................................................ 3, 9, 10, 11

*Kearney v. Foley & Lardner, LLP*
    590 F.3d 638 (9th Cir. 2009) ........................................................................... 3, 4, 5, 6

*Kottle v. Northwest Kidney Centers*
    146 F.3d 1056 (9th Cir. 1998) ................................................................................ 4, 5

*Landmarks Holding Corp. v. Bermant*
    664 F.2d 891 (2d Cir. 1981) ....................................................................................... 5

*Lindy Pen Co. v. Bic Pen Corp.*
    982 F.2d 1400 (9th Cir. 1993) .................................................................................. 13

*Litton Systems Inc. v. American Telephone and Telegraph Co.*
    700 F.2d 785 (2d Cir. 1983) ....................................................................................... 5

*Living Designs, Inc, v. E.I. Dupont de Nemours & Co.*
    431 F.3d 353 (9th Cir.2005) ....................................................................................... 5

*Nobelpharma AB v. Implant Innovations, Inc.*
    141 F.3d 1059 (Fed. Cir. 1998) .................................................................................. 3

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*
    793 F.2d 1132 (9th Cir.1986) ................................................................................... 14

DUCKOR
SPRADLING
METZGER
& WYNNE

ii

Case Nos. 07-CV-0984

410272.1

*Porous Media Corp. v. Pall Corp.*
  110 F.3d 1329 (8th Cir. 1997)......................................................................................... 14

*Professional Real Estate Investors v. Columbia Pictures ("PRE")*
  508 U.S. 49 (1993)........................................................................................................... 3

*Sosa v. DIRECTV, Inc.*
  437 F.3d 923 (9th Cir. 2006)....................................................................................... 4, 5

*Southland Sod Farms v. Stover Seed Co.*
  108 F.3d 1134 (9th Cir. 1997)................................................................................ 13, 14

*United Mine Workers v. Pennington*
  381 U.S. 657 (1965)......................................................................................................... 3

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*
  375 F.3d 1341 (Fed.Cir. 2004)....................................................................................... 3

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*
  382 U.S. 172 (1965)......................................................................................................... 3

*Winarto v. Toshiba America Electronics Components, Inc.*
  274 F.3d 1276 (9th Cir. 2001)....................................................................................... 2

*Zenith Electronics Corp. v. Exzec, Inc.*
  182 F.3d 1340 (Fed. Cir. 1999)............................................................................... 3, 14

**Statutes**

15 United States Code § 1117.......................................................................................... 13
35 United States Code section 261................................................................................. 10
Federal Rule of Civil Procedure section 50(a)....................................................... 1, 2, 12
Federal Rule of Civil Procedure section 50(b)....................................................... 1, 13, 15

**Other Authorities**

Trial Exhibit 2560-0002...................................................................................................... 3
Trial Exhibit 2634............................................................................................... 4, 10, 11
Trial Exhibit 2708......................................................................................................... 3, 4
Trial Transcript, p. 177-182 (June 7, 2010)................................................................... 9

DUCKOR
SPRADLING
METZGER
& WYNNE

iii

Case Nos. 07-CV-0984                                                                              410272.1

Defendant and Counterclaim Plaintiff Signet Armorlite ("Signet Armorlite"), pursuant to Federal Rule of Civil Procedure section 50(b), hereby renews its Motion for Judgment as a Matter of Law ("JMOL") concerning *Noerr-Pennington* immunity as follows:

## I. INTRODUCTION

Signet's renewed Motion for Judgment as a Matter of Law seeks the court's determination, as a matter of law, that Zeiss is not entitled to *Noerr-Pennington* immunity. *Noerr-Pennington* petitioning immunity simply does not extend to filing and maintaining a case without legal standing, hiding and withholding documents and making material misrepresentations to the court, or failing to comply with discovery obligations, misrepresenting compliance, and then taking advantage of those very failures at trial. Use of the litigation process itself as the means to achieve competitive objectives is a choice – a choice that deprives a party of immunity that may otherwise attach under *Noerr-Pennington*.

A few days before the case went to the jury, Signet filed an appropriate Rule 50(a) seeking to have the court determine that Zeiss is afforded no *Noerr-Pennington* immunity. If the *Noerr-Pennington* issue had been decided before the case went to the jury, complicated *Noerr-Pennington* bad faith language would not have been infused throughout jury instructions on the elements the Lanham Act and California common law unfair competition, and duplicated in a stand-alone *Noerr-Pennington* instruction and two separate verdict form questions. As it turned out, the jury answered neither of the two *Noerr-Pennington* questions, nor did it answer the California common law unfair competition question.

The court having ordered a mistrial concerning the issue of *Noerr-Pennington*, and such bad faith language having been infused within instructions to the jury on the elements of the Lanham Act claim, it is necessary and appropriate for the court order a new trial on the Lanham Act counterclaim in tandem with a ruling that Zeiss is not afforded *Noerr-Pennington* immunity.

## II. PROCEDURAL HISTORY

On June 6, 2010, Signet Armorlite filed a Rule 50(a) Motion for Judgment as a Matter of Law (JMOL) to have the court determine that *Noerr-Pennington* affords no protection to Zeiss

DUCKOR
SPRADLING
METZGER
& WYNNE

1

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                   410272.1

with respect to Signet's counterclaims. (Dckt. 855.) Signet's JMOL was denied on June 7, 2010. (Dckt. 869.) On June 8, 2010, after the parties rested and the jury was instructed, closing arguments commenced. (Dckt. 870.) When closing arguments concluded on June 9, 2010, the jury began its deliberations. (Dckt. 871.)

After the jury submitted several questions, and had been returned for further deliberations, on June 15, 2010, the jury reported itself deadlocked on many issues. After conferring with the parties and counsel concerning the partially completed jury verdict form, the court read in open court certain unanimous verdicts reached by the jury, and polled the jury as to those verdicts read. The court then accepted those as partial verdicts, comprised of the following: Question 1 – no literal infringement as to claims 5 and 7, Question 2 – no infringement as to claim 7 under the doctrine of equivalents, and no liability of counter-defendants under the Lanham Act and Intentional Interference with Prospective Economic Advantage counterclaims. Verdict form questions relating to *Noerr-Pennington* immunity were left unanswered by the jury. (Dckt. 881.) With the jury hopelessly deadlocked, the court declared a mistrial as to the remaining claims and discharged the jury on June 15, 2010. (Dckt. 877.)

## III.  STANDARD FOR JUDGMENT AS A MATTER OF LAW

The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is the same for granting the pre-submission motion under Rule 50(a). *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). The court may grant a motion for judgment as a matter of law with respect to any "issue" when a party has been heard on the issue and fails to provide "a legally sufficient evidentiary basis to find for that party on that issue." *Hammond v. T.J. Litle & Co.*, 82 F.3d 1166, 1172 (1st Cir. 1996).

## IV.  THIS COURT SHOULD DETERMINE THAT ZEISS IS NOT ENTITLED TO THE PROTECTIONS OF *NOERR-PENNINGTON* AS A MATTER OF LAW.

While petitioning the government or filing a lawsuit generally is protected conduct under *Noerr-Pennington*[1], there are many exceptions. Two common exceptions include: (1) attempting

---

[1] *Eastern Railroad v. Noerr Motor Freight*, 365 U.S. 1127, 137-38 (1961) (antitrust liability for petitioning, but acknowledging where a publicity campaign is a mere sham to cover attempts to interfere with a competitor's business

2

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                      410272.1

DUCKOR
SPRADLING
METZGER
& WYNNE

to enforce a patent obtained through fraud upon the USPTO (known as *Walker Process*[2] fraud), and (2) engaging in "sham litigation" as set forth in *Professional Real Estate Investors v. Columbia Pictures* ("*PRE*"), 508 U.S. 49, 60-61 (1993); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). A third exception exists where the allegedly unlawful conduct "consists of making intentional misrepresentations to the court" and those misrepresentations or the "party's knowing fraud upon ... the court deprive the litigation of its legitimacy." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009). A fourth exception exists where a party, knowing it does not have standing or with no reasonable basis for asserting standing, nevertheless files or joins a lawsuit. *In re Burlington Northern, Inc.*, 822 F.2d 518, 529-31 (5th Cir. 1987).

While an upcoming phase of trial will determine *Walker Process* fraud[3], and while "sham litigation" was presented in jury instructions and the verdict form, this court already determined the facts justifying the third and fourth bases for denying Zeiss protection under *Noerr-Pennington*. Zeiss instituted this action without standing to assert patent infringement, and then maintained the suit by committing fraud upon this Court, both by way of concealment and affirmative misrepresentations, which this Court clearly documented in Orders describing how Zeiss acted in "bad faith"[4] and "frustrated the search for the truth."[5] Zeiss then continued to use

---

relationships, justifying application of the Sherman Act); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965) ("efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition")
[2] *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)
[3] Agreed by the parties in court on June 4, 2010 on the record. Signet recognizes the court granted JMOL as to its antitrust counterclaim during the jury trial, but it believes *Walker Process* fraud-related antitrust claims to be tried to the court remain viable. Separately and additionally, however, a finding of *Walker Process* fraud not only strips away *Noerr-Pennington* immunity for purposes of antitrust claims, but also vitiates *Noerr-Pennington* immunity for state law claims and/or Lanham Act claims. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354-1355 (Fed. Cir. 1999) ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out."); *see e.g.*, *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1367 (Fed.Cir. 2004), *rev'd on other grounds*, 126 S. Ct. 980 (2006) (*Walker Process* fraud vitiated immunity for purposes of upholding jury verdict on state law tortious interference with prospective advantage claim – ""ConAgra's attempts to enforce its fraudulently obtained patent were an intentional interference with the future of Unitherm's business relationship with Jennie-O, and Kinrich's model measured Unitherm's damages...We therefore affirm the jury's finding of liability for intentional interference with prospective advantage, and of the consequent damages."); *see also*, *Delano Farms Co. v. California Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1181 (E.D. Cal. 2009) (in the course of granting motion to dismiss antitrust claim, the court denied motion to dismiss unfair competition claims based on fraudulently procured patent).
[4] (9-16-10 Amended Order, Dckt. 345, p. 4:6, which also is Trial Exhibit 2708, admitted during trial testimony of Karen Roberts; *see also*, ¶3 of Roberts Decl. (Dckt. 178-2, which is also Trial Exhibit 2560-0002), as referenced in

3

DUCKOR
SPRADLING
METZGER
& WYNNE

the litigation process as a weapon, as outlined in Magistrate Porter's 1-21-10 Report and Recommendation that was adopted by the court. As a result, *Noerr-Pennington* does not immunize Zeiss from liability under Signet Armorlite's counterclaims, and this Court should grant judgment as a matter of law on these issues as there is no legally sufficient evidentiary basis for a jury to find other than that Zeiss has engaged in conduct that is unlawful once the qualified litigation immunity is found inapplicable.

### A.   The Litigation Conduct Exception to *Noerr-Pennington* Immunity.

Judgment as a matter of law is required here because *Noerr-Pennington* affords no protection to litigants who make "intentional misrepresentations to the court" and those misrepresentations or the "party's knowing fraud upon ... the court deprive the litigation of its legitimacy." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009), *citing Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998) and *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).

As the United States Supreme Court explained in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972), misrepresentations condoned in the political arena, are not immunized when used in the adjudicatory process and may not seek refuge under the umbrella of "political expression." Courts and adjudicative bodies must be able to rely on a litigant's factual assertions as true, and that need to so rely increases the harm of misrepresentations.

As the Ninth Circuit in *Clipper Exxpress* explained, the adjudicatory sphere is much different from the political sphere. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F.2d 1240, 1261 (9th Cir. 1982), cert. denied, 459 U.S. 1227 (1983). Debate in the political sphere can accommodate false statements and reveal their falsity. *Id.* By contrast, information supplied by the parties to litigation must be relied on as accurate for decision making and dispute resolving. The supplying of fraudulent information, or suppression of information a party is duty-

---

Dckt. 345/Trial Exhibit 2708 on p. 3, ll.13-21.)
[5] (3-17-09 Dismissal Order, Dckt. 286, p. 7:5, which also is Trial Exhibit 2634, admitted during trial testimony of Karen Roberts)

4

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                        410272.1

DUCKOR
SPRADLING
METZGER
& WYNNE

bound to disclose destroys fair and impartial functioning of courts. *Id.; see also, Landmarks Holding Corp. v. Bermant*, 664 F.2d 891 (2d Cir. 1981); *Litton Systems Inc. v. American Telephone and Telegraph Co.*, 700 F.2d 785 (2d Cir. 1983). Thus, the protections of *Noerr-Pennington* are narrower in courts of law, because misrepresentations to a court undermine the legitimacy of the court process, "frustrate the search for the truth," and lead to actual prejudice.

In *Kottle v. Northwest Kidney Centers*, the Ninth Circuit explained the litigation misconduct basis:

> [I]n the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." [citations omitted]

*Kottle v. Northwest Kidney Centers, supra*, 146 F.3d at 1060.

Further, in 2009, *Kearney v. Foley & Lardner*, the Ninth Circuit addressed litigation misconduct in the context of discovery communications, interactions with expert witnesses and contractors, and statements to the court. *Kearney* involved an underlying eminent domain valuation proceeding in which defendants' misrepresentations to the court and suppression of evidence resulted an artificially low property compensation award. The Ninth Circuit found the hiding of documents (test results on the property) to fall within the exception to *Noerr-Pennington* immunity as follows:

> In *Sosa v. DIRECTV, Inc.*, the court described a similar situation of a RICO suit predicated on **"fraudulent discovery conduct** in prior litigation that induced the plaintiffs to settle the suit for a lower amount than they would have in the absence of the fraud." 437 F.3d 923, 940 (9th Cir. 2006) (discussing *Living Designs, Inc, v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir.2005)). Although *Living Designs* was not considered under *Noerr-Pennington*, the Sosa court said "the conduct alleged quite clearly fell within the third prong of *Kottle*'s sham litigation exception, in that it amounted to a knowing fraud ... upon the court depriving] the litigation of its legitimacy.' " *Id., quoting Kottle*, 146 F.3d at 1060), *Kearney*'s allegations are very similar to those described by the Sosa court in Living Designs and so should also fall within the third prong of the sham litigation exception.

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 -647 (9th Cir. 2009) (emph. added)

///

DUCKOR SPRADLING METZGER & WYNNE

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                          410272.1

B. **The Court Should Determine the Litigation Misconduct Exception to Noerr-Pennington Applies to Zeiss' Conduct.**

This Court unequivocally found that Zeiss failed to comply with court orders, frustrated the search for the truth, and acted in bad faith. Even after these findings relating to standing, Zeiss committed further misconduct that directly related to and negatively affected Signet's counterclaims, as detailed in Magistrate Porter's 1-21-2010 Report and Recommendation.

Zeiss' misconduct precluded Signet Armorlite from timely or ever obtaining particular information concerning contacts Zeiss had with Signet customers. Having used the litigation process as a weapon, as a matter of law, Zeiss is not entitled to the shield of *Noerr-Pennington*. *Kearney v. Foley & Lardner, LLP*, supra. In *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2nd Cir. 1997), after the district court accepted an argument that bad faith in the sanctions context differed from bad faith for purposes of *Noerr-Pennington*, the Second Circuit reversed, holding that the district court should have given preclusive effect to its determination of bad faith and rejected *Noerr-Pennington* immunity.

This Court's September 16, 2009 Order detailed Zeiss' initial fraud upon this Court as follows:

(1) Zeiss withheld the 2004 Carl Zeiss Stiftung to Carl Zeiss AG transfer, the 2005 Carl Zeiss AG to Carl Zeiss Augenoptik transfer, and the alleged March 2006 oral assignment by Carl Zeiss Vision GmbH to CZVI from discovery, with no explanation of the failure to provide these documents either when their original Complaint was filed May 17, 2007, or the sixteen months that followed. (Dckt. 345, p. 2);

(2) Zeiss' Director Karen Roberts admitted Zeiss was aware of the standing defects in late 2007, but failed to call attention to it until January 14, 2008, when it notified the Magistrate Judge (in confidence), but then continued to conceal lack of standing Zeiss sought to leverage a settlement and went through the labor intensive claim construction process, all the way until September 26, 2008 when the fraud began to come to light as Zeiss sought to amend their Complaint to add Carl Zeiss Vision GmbH (Dckt. 345, p. 2);

6

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                  410272.1

(3) Zeiss counsel learned of these documents in September 2007 -- only four months after filing the original Complaint - but remained silent, instead proceeding with claim construction proceedings and settlement discussions; (Id., p. 3);

(4) Plaintiffs withheld a purported Quitclaim Assignment, although executed on January 10, 2008, and failed to inform either Defendant or the Court of its existence -- not in the motion to amend the Complaint, not in the reply brief, and not at oral argument, instead only revealing it for the first time in an Amended Complaint filed December 18, 2008. (Id., pp. 2-3);

(5) Zeiss withheld the Quitclaim Assignment for so long as it suited its own ends, without regard for rules or the truth, revealing it only after Court rejected Zeiss' proffered chain of title based on the previously withheld documents (the 2004 and 2005 transfer documents and the 2006 oral assignment). (*Id.* at p.3).

Thus, Zeiss never genuinely presented the Quitclaim Assignment to the court. Rather, it was presented when all else had failed, and only when Zeiss felt it could benefit from finally disclosing it – the very essence of using litigation process as a weapon rather than to seek redress.

Accordingly, this Court specifically found:

> The **repetitive nature** of Plaintiffs' conduct, combined with the documents' direct relevance to the standing issue warrants a finding of willfulness, Plaintiffs' conduct also delayed Defendant's investigation into Plaintiffs' standing and the overall progress of this case, which warrants a finding of bad faith.

(Dckt., 345, p. 4:3-6; *emphasis added*.)

This Court's second Dismissal Order, issued on March 17, 2009, found that Zeiss acted "without substantial justification" in concealing known defects in standing from Signet Armorlite and this Court (Dckt. 286, p. 4), and stated:

///

> There can be little dispute that [Signet Armorlite] has been prejudiced by Plaintiffs' conduct in this litigation.

(Dckt. 286.)

This Court's next statement in its March 17, 2009 Dismissal Order epitomizes why Zeiss'

7

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                            410272.1

litigation misconduct is sufficient to deny any protection by *Noerr-Pennington*:

> Although there is nothing inherently prejudicial about being forced to defend oneself against a claim of patent infringement, prejudice does arise if the party asserting the claim is not the owner of the patent in suit.

(Dckt. 286.)

In addition, this Court further found:

> Plaintiffs' conduct in this case not only failed to comply with those standards, but **frustrated the search for the truth**. Under these circumstances, **there has been actual prejudice to Defendant, not just the risk thereof.**

(*emph. added*; Dckt. 286.

Even after this court's March 17, 2009 Order, Zeiss continued with misconduct. After verifying on March 31, 2009 that Zeiss' production of documents was complete with respect to the Magistrate Judge's March 12, 2009 Order, Zeiss then produced over 200,000 pages of additional documents. Yet, misrepresentations and misconduct still continued, as detailed in Magistrate Judge Porter's January 21, 2010 Report & Recommendation (Dckt. 449), adopted in full by this Court (Dckts. 583 and 620), including:

> **failing to identify third parties with whom it had communicated about the litigation, the patent in suit or Signet Armorlite's Kodak Unique lenses.** (Dckt. 449, p. 9-14);

> producing financial documents at the end fact discovery frustrating the discovery process (*Id.*, p, 7);

> violating a valid court order regarding producing financial documents (*Id.*, p. 7);

> belatedly producing German arbitration documents (Id., p. 19); and

> producing fund transfer documents two months after the fact discovery deadline (*Id.*, p. 23).

Zeiss misrepresented to this court that it had no communications with third parties concerning the lawsuit. Yet, the testimony of Zeiss officers Claude Labeeuw, Cheryl Vescio, and others presented by Signet at trial, and not refuted by Zeiss, revealed multiple communications with third parties concerning the lawsuit, demonstrating that <u>Zeiss never complied</u> with this

8

DUCKOR
SPRADLING
METZGER
& WYNNE

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                                   410272.1

court's December 2, 2008 Order concerning contacts regarding the lawsuit with third parties and even if it had done so, the fact discovery period had already passed. Instead of complying, Zeiss left it to Signet to "go fish," knowing that if Signet republished the lawsuit allegations to Signet's customer base, it would only reintroduce uncertainty in the market, and cause further decreases in Signet's sales of Kodak Unique lenses. This use of litigation misconduct as a weapon to achieve anticompetitive goals fully justifies denial of *Noerr-Pennington* immunity.

During trial, Zeiss leveraged its own failure to comply concerning third party contacts[6] by (1) using it as a sword at trial (June 7, 2010 Trial Transcript, p. 177-182), (2) seeking exclusion of expert damages opinions by Signet's expert Mark Hosfield (Dckt. 853), and (3) seeking Judgment as a Matter of Law on Signet's counterclaims (Dckts. 859-860).

C. **Zeiss' Known Lack of Standing Also Vitiates *Noerr-Pennington* Immunity.**

Carl Zeiss Vision International GmbH and Carl Zeiss, Inc. filed this lawsuit and publicized it throughout the eyecare industry on May 17, 2007. (Dckt. 1.)

Under *In re Burlington Northern, Inc.*, 822 F.2d 518, 530 (5th Cir. 1987), a party who sues without standing may not claim *Noerr-Pennington* protection:

> We do not believe *Noerr-Pennington* extends to a litigant who has not properly invoked a court's power to act in a case, even though the petitioner may otherwise genuinely desire relief on a meritorious claim. Unlike the legislative arena, **substantial limits exist on the ability of persons to pursue claims in the courts.** In particular, a person whose interest in a controversy is not sufficient to confer standing has no right to petition the court as a party and obtain relief. Thus, **a person cannot reasonably claim that his participation in a lawsuit in which he has no standing is a genuine attempt to influence governmental decisionmaking.**

On December 12, 2008, this court ruled on Signet's Motion to Dismiss. Plaintiffs did not even dispute that CZV, Inc. did not have standing, and in case they did, this Court specifically found CZV, Inc. did not, because as a matter of blackletter law, a non-exclusive licensee does not have standing. (Dckt. 201, p. 3. ll. 20-23 and fn 3.) *In re Burlington Northern* applies. There is no dispute that CZV, Inc. never had any basis for standing whatsoever.

---

[6] (Dckt. 449, p. 9-14)

9

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                               410272.1

///

*In re Burlington Northern* also states:

> Of course, a person has a right to assert his claim of standing along with his claim on the merits and seek to influence the court to recognize his interest in the controversy. Thus, to the extent the litigant has a reasonable basis for believing that his claim of standing might be accepted by the court, and thus that he will have the right to participate in the litigation process and obtain relief, he will be protected by *Noerr-Pennington* even though he ultimately loses.

*In re Burlington Northern, Inc.*, 822 F.2d at 530.

In the same December 12, 2008 Order, however, this Court found that CZV International GmbH did not have standing. The document submitted by plaintiffs to show standing was not a transfer, but only appeared to refer to a purported earlier transfer. That earlier transfer, according the sworn Declaration of Zeiss' Dieter Braunger, however, was oral, which could not confer standing because as a matter of blackletter law, because patents are only assignable "by an instrument in writing" under 35 U.S.C. § 261. The knowledge that it was an "oral transfer" was Zeiss' own. And 35 U.S.C. §261, added in 1952, is plain and clear – "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." Thus, there was no reasonable basis upon which CZV International GmbH could have had standing.

The court gave CZV International GmbH and CZV Inc. a chance to amend. CZV International GmbH filed an amended Complaint on December 18, 2008, and confirming it no basis or even an argument for standing, CZV, Inc. was not included. Rather, CZV GmbH was substituted. In that Amended Complaint, plaintiffs argued a new chain of title, abandoning the obviously false alleged oral assignment (advanced *under oath* by Declaration of Braunger), and instead sought to demonstrate standing by way of a Quitclaim Assignment. The problem – it was a Quitclaim Assignment executed on January 10, 2008. (Dckt. 286, p. 2:21 to 3:15, Trial Exhibit 2634.)

10

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                           410272.1

DUCKOR
SPRADLING
METZGER
& WYNNE

Again as a matter of well-established blackletter law[7], a Quitclaim Assignment executed on January 10, 2008 could never confer standing upon CZV International GmbH for a patent infringement suit filed on May 17, 2007. The Quitclaim Assignment could not confer standing *regardless* of whether plaintiffs were precluded from relying on it as a sanction. (See Dckt. 286/Trial Exhibit 2634 at p. 4:17 to 5:11.) Thus, no plaintiff to the May 17, 2007 Complaint or the Amended Complaint ever had any reasonable argument for standing when the May 17, 2007 Complaint was filed. And in fact, CZV GmbH – the entity added in the Amended Complaint on December 18, 2008 – was found to have no standing in the March 17, 2009 Dismissal Order. (Dckt. 286/Trial Exhibit 2634) But CZV GmbH then sued Signet (again) in the April 1, 2009, before it was again found to have no standing on summary judgment. (See Dckt. 619.)

This Court's March 17, 2009 Dismissal Order (Dckt. 286), and its September 16, 2009 Amended Order on Attorneys' Fees (Dckt. 345) found that Zeiss knew or should have known it lacked standing with respect to its May 17, 2007 Complaint and December 18, 2008 Amended Complaint. (Dckt. 201, pp. 3-7; Dckt. 345, pp. 2:8 to 4:6.) Zeiss' objective knowledge of lack of standing precludes any *Noerr-Pennington* immunity, because the party filing the suit was never entitled to make the filing. *In re Burlington Northern, Inc.*, 822 F.2d 518, 529-31 (5th Cir. 1987).

Zeiss' clear knowledge of lack of standing is shown by its concealment of evidence concerning the standing defects, coupled with its misrepresentations to the court – including the Braunger Declaration. (Dckt. 345, pp. 2:8 to 4:6.) If the misrepresentations/ misconduct basis is to have any meaning under law, *Noerr-Pennington* immunity cannot apply to Zeiss' acts relating to filing, prosecuting and publicizing its May 2007 and December 2008 Complaints. What is left in place is the unrefuted evidence of Zeiss' assertions in their May 2007 and December 2008 complaints of alleged intentional torts by Signet, made by Zeiss entities that knew or should have known that they lacked the qualified litigation privilege to make the allegations. Judgment as a matter of law should be entered (1) that no Noerr-Pennington immunity extends to Zeiss and (2)

---

[7] This Court cited five separate cases on this point in its Dismissal Order, spanning from *Switzer Bros.* in 1957 to *Proctor & Gamble* in 1995, and including a Northern District of California case, *Quiedan Co.* from 1993. See Dckt. 286/Trial Exhibit 2634 at p. 4:17 to 5:11.

11

DUCKOR
SPRADLING
METZGER
& WYNNE

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                         410272.1

in favor of Signet on its Lanham Act and unfair competition counterclaims, or alternatively a new trial ordered on the Lanham Act counterclaim should be ordered, as discussed in the next section.

///

///

## V. THE COURT ALSO SHOULD ORDER A NEW TRIAL AS TO THE LANHAM ACT COUNTERCLAIM.

Signet initially sought to have *Noerr-Pennington* determined *in limine*, but the motion was denied with a suggestion that it be filed as a Rule 50(a) motion. (Dckt. 810 at p. 3:9-10.) Signet then filed its Rule 50(a) motion on June 6, 2010, which was denied. (Dckt. 855; 869.)

### A. A New Trial on the Lanham Act Counterclaim is Warranted Because a Mistrial Was Declared As to *Noerr-Pennington*, and the Lanham Act Jury Instructions Were Infused with Complicating and Duplicative *Noerr-Pennington* Immunity Language.

Had the court granted Signet Armorlite's Rule 50(a) motion, there would have been no need to include complicated language aimed at addressing the objective and subjective sham litigation exception inquiries within three separate jury instructions: (1) in Jury Instruction 3.0, "bad faith" language was infused into the elements of Common Law Unfair Competition, (2) in Jury Instruction 4.1, "bad faith" language was infused into the elements of the Lanham Act claim and the definition of the bad faith language was incorporated by reference to Jury Instruction 3.0, and finally, (3) the factual issues addressing sham litigation were included as a separate stand-alone instruction in Jury Instruction 5.0. (Dckt. 882.) The two factual inquiries for the sham litigation exception also were included as Questions 19 and 20 on the Verdict form. (Dckt. 881, p. 7.) On the partially completed verdict form, the jury did not reach a verdict (or make findings) as to Questions 19 or 20. Nor did the jury reach a verdict as to common law unfair competition. (Dckt. 881, p. 5.) Rather, as to the *Noerr-Pennington* issues and as to common law unfair competition, the court declared a mistrial. (Dckt. 877.)

Had Signet Armorlite's Rule 50(a) motion been granted, the issue of *Noerr-Pennington* immunity would have been resolved, obviating the need for multiple sham litigation instructions

12

and the complicated infusion of "bad faith" inquiries within instructions stating the elements of common law unfair competition and the Lanham Act claims. As presented to the jury, Instruction 4.1 (Lanham Act elements) was infused with "bad faith" language that itself incorporated a definition of bad faith from another instruction. Because it was complicated and duplicative, it was a source for confusion. Yet, ultimately, it was unnecessary because Zeiss' lack of standing and litigation misconduct should have foreclosed any *Noerr-Pennington* protection, and the Court's prior findings of bad faith by Zeiss should have been accepted by the jury. In ruling on Signet's post-verdict renewed motion for judgment as a matter of law on the *Noerr-Pennington* immunity issue, the court is well within its discretion to order a new trial as to the Lanham Act counterclaim. Rule 50(b) clearly provides, "In ruling on the renewed motion, the court may:…(2) order a new trial…"

Moreover, because the court declared a mistrial (*i.e.*, new trial) as to *Noerr-Pennington* (Questions 20 and 21 on the verdict form), the court should order a new trial as to the Lanham Act counterclaim, so the jury can consider the Lanham Act claim based on standard Lanham Act jury instructions that do not have *Noerr-Pennington* bad faith language infused throughout the traditional elements.

**B.  A New Trial on the Lanham Act is Further Warranted Because in the Absence of Noerr-Pennington Immunity, Zeiss' False Publications Establish Liability Under the Lanham Act, At a Minimum, for Injunctive Relief and Related Relief.**

A new trial on the Lanham Act counterclaim is further warranted because even "an inability to show actual damages does not alone preclude recovery" under the Lanham Act. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) (*quoting Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993)). In the absence of *Noerr-Pennington* immunity, liability under the Lanham Act claim for injunctive relief, at a minimum, is established from Zeiss' wide-spread false publication of this litigation when it lacked standing. 15 U.S.C. § 1117 of the Lanham Act permits the district court to fashion any just monetary award so long as it constitutes "compensation" for the plaintiff's losses or unjust enrichment and is not a penalty.

13

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                                     410272.1

*Southland, supra* at p. 1146. Within these bounds, the court must fashion relief based on the totality of the circumstances. *Id.* This includes determinations of costs and attorneys' fees.

A finding of deliberate falsity gives rise to a rebuttable presumption of injury. *Southland Sod*, 108 F.3d at 1146; *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 694 (6th Cir. 2000); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997); *see Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, C08-1372 RSM, 2010 WL 1903431 (W.D. Wash. May 11, 2010). Additionally, the Ninth Circuit held that a plaintiff in a Lanham Act case is not required to prove that defendants were likely to violate the Act in the future. *Campagnolo, supra, citing Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir.1986).

Accordingly, in addition to a determination that Zeiss is not afforded protection under *Noerr-Pennington*, Signet Armorlite requests that the court also order a new trial as to the Lanham Act counterclaim.

While bad faith must be shown for a patentee to be liable under the Lanham Act or an unfair competition claim for false marketplace statements, the Federal Circuit clearly explained:

> Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out.

*Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).

## VI.   CONCLUSION

In view of Zeiss' concealment and affirmative misrepresentations to the court continuously from the inception of this case, as found in numerous court Orders in which the court specifically found Zeiss to have lacked standing, acted in "bad faith" and to have "frustrated the search for the truth," along with its further misconduct directly impacting Signet's proof on the counterclaims issues, Zeiss is not entitled to *Noerr-Pennington* immunity.

///

///

///

///

14

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984
410272.1

///

///

///

///

Accordingly, Signet Armorlite respectfully requests the court determine as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), that Zeiss is afforded no immunity under the *Noerr-Pennington* doctrine as it relates to Signet Armorlite's counterclaims. Additionally, because unnecessary and complicating bad faith language was infused within the jury instructions regarding the Lanham Act, Signet Armorlite further requests that the court order a new trial as to its Lanham Act counterclaim.

Respectfully submitted,

ICE MILLER, LLP

DATED: July 13, 2010

By: /s/ Richard A. Schnurr
RICHARD A. SCHNURR
BRIAN A. LUM
JENNIFER M. DIENES

DATED: July 13, 2010

DUCKOR SPRADLING METZGER & WYNNE
A Law Corporation

By /s/ John C. Wynne
JOHN C. WYNNE
DOUGLAS W. LYTLE
KEVIN L. WHEELER

Attorneys for Defendant
SIGNET ARMORLITE, INC.

15

SIGNET ARMORLITE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ZEISS IS NOT ENTITLED TO *NOERR-PENNINGTON* IMMUNITY BASED, HAVING FILED AND CONTINUED ITS 2007 LAWSUIT WITHOUT STANDING AND HAVING ENGAGED IN AN EXTENSIVE PATTERN OF PREJUDICIAL AND BAD FAITH LITIGATION MISCONDUCT; AND FOR A NEW TRIAL AS TO SIGNET ARMORLITE'S LANHAM ACT COUNTERCLAIM
Case Nos. 07-CV-0984                                                                                                      410272.1

DUCKOR
SPRADLING
METZGER
& WYNNE