CYRIL J. DANTCHEV (SBN 129585)
cyril.dantchev@bipc.com
ROBERT K. EDMUNDS (SBN 89477)
robert.edmunds@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Fax: 619 702 3898

SAMUEL BRAVER (*pro hac vice*)
samuel.braver@bipc.com
SUSAN YOHE (*pro hac vice*)
susan.yohe@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Center
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone: 412 562 8800
Fax: 412 562 1041

ERIC WEISBLATT (*pro hac vice*)
eweisblatt@wileyrein.com
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: 202 719 7416
Fax: 202 719 7049

S. LLOYD SMITH. (*pro hac vice)*
lloyd.smith@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Telephone: 703 836 6620
Fax: 703 836 2021

Attorneys for Plaintiffs and Counter-Defendants,
CARL ZEISS VISION INTERNATIONAL GMBH and CARL ZEISS VISION GMBH,
CARL ZEISS VISION, INC., CARL ZEISS STIFTUNG and CARL ZEISS AG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

CARL ZEISS VISION INTERNATIONAL GMBH and CARL ZEISS VISION GMBH,

Plaintiffs,

v.

SIGNET ARMORLITE, INC.,

Defendant.

AND RELATED COUNTERCLAIMS.

Case No. 07 CV 0894 DMS (POR)
[Related Case No. 09 CV 0657 DMS (POR)]

**COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION**

Judge: Hon. Dana M. Sabraw
Dept: Courtroom 10
Complaint Filed: May 17, 2007 (07CV0894)
April 1, 2009 (09CV0657)
Trial: May 17, 2010

**Hearing Date: August 20, 2010**
**Hearing Time: 1:30 p.m.**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. SIGNET'S EVIDENCE IN SUPPORT OF ITS COMMON LAW UNFAIR COMPETITION CLAIM .......... 2

III. ARGUMENT .......... 4

A. The Jury's Verdicts for Zeiss on Signet's Congruent Business Tort Causes of Action Impel a Judgment for Zeiss on Signet's Common Law Unfair Competition Claims .......... 4

1. California Common Law Claims and Unfair Competition Are Substantially Congruent to Lanham Act Claims .......... 4

2. As a Matter of Law, Signet's Common Law Unfair Competition Claim Falls With Its Other Business Tort Claims .......... 5

B. Signet Did Not Prove That Zeiss Asserted in "Bad Faith" That Signet Infringed the '713 Patent .......... 6

C. Zeiss Has *Noerr-Pennington* Immunity Because Signet Has Not Established Zeiss' Claims Were Objectively Baseless .......... 7

D. Standing Defects Do Not Render the Infringement Claims Against Signet Objectively Baseless .......... 8

E. Signet Did Not Prove Any Allegedly Unfair Business Conduct of Zeiss Caused Any Harm to Signet .......... 11

IV. CONCLUSION .......... 13

- i -

COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) ..........................8

*Baltimore Scrap. Corp. v. David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)..............................11

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 833 P.2d (1992)...........................................4

*Cleary v. New Corp.*, 30 F.3d 1255 (9th Cir. 1994) ........................................................................4

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525 (9th Cir. 1991) ........................................................................11

*Dominant Semiconductor Sdn. Bdh. v. Osram GmbH*, 524 F.3d 1254 (Fed. Cir. 2008)..................6

*Erlich v. Etner*, 224 Cal. App. 2d 69 (1964)..........................................................................6, 11

*Falcon Lock Co. v. Best Universal Lock Co.*, 362 F.2d 221 (9th Cir. 1966)...................................7

*Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375 (2004) .................................................13

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 826 F. Supp. 948 (S.D. Cal. 1996).....................................8

*Globetrotter Software v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) .....1, 2, 7, 10

*Golan v. Pingel Enter., Inc.*, 310 F.3d 1360 (Fed. Cir. 2002) ........................................................7

*Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F. Supp. 256 (N.D. Ill. 1993)...............................8

*In re Burlington Northern, Inc.*, 822 F.2d 518 (5th Cir. 1987)......................................................10

*Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998) ...................................................9

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995)...........................................8

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S. Ct. 1920 (1993)...........................................................................7, 9, 10, 11

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)........................................4

*U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 81 Cal. Rptr.2d 708 (Ct. App., 1st Dist. 1999) .........................................................4

*Vae Nortrak North America, Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142 (N.D. Ala. 2006) ....................7

*Village Supermarket, Inc. v. Mayfair Supermarkets, Inc.*, 634 A.2d 1381 (N.J. Super. 1993) .......11

*Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 69 Cal. Rptr. 2d 31 (1997) ............12

**Rules**

Fed. R. Civ. P. 50(b) ....................1, 13

**Other Authorities**

California Business and Professions Code, § 17200 ....................2, 4, 6

- iii -

COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

## I. INTRODUCTION

Signet presented to the jury multiple counterclaims all generally described as business torts: unfair competition, Lanham Act violations, and intentional interference with prospective business advantage. All of the counterclaims were premised on a small, common nucleus of facts and allegations. The jury found in favor of Zeiss on the counterclaims for violation of the Lanham Act and the California common law tort of intentional interference with prospective economic advantage.

The jury failed to reach a verdict on the common law unfair competition counterclaim. It is the sole remaining business tort theoretically triable to the jury. The dismissal of this counterclaim will prevent the diversion of the next jury from what this case is truly about -- Signet's infringement of the '713 patent.

Zeiss requests entry of judgment under Fed. R. Civ. P. 50(b) on Signet's unfair competition counterclaim based on the following:

- The jury's verdict on the other business tort claims based on the same alleged unfair conduct compels a judgment on the common law unfair competition claim;

- Signet's total failure to prove that Zeiss' activities caused any harm to Signet's customer relations dooms its unfair competition claim;

- Signet's failure to prove bad faith assertion of its patent claim dooms its unfair competition claim;

- Because the claim of patent infringement against Signet was not objectively baseless, Zeiss is entitled to *Noerr-Pennington* immunity from Signet's common law unfair competition claim.

As to the latter two points, while the jury did not reach a verdict on the patent infringement claims, Signet did not show that the '713 patent is "obviously invalid or plainly not infringed." *Globetrotter Software v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1375 (Fed. Cir. 2004), discussed below.

- 1 -
COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION                                         07 CV 0894 DMS (POR)

The assertion of the claim of patent infringement cannot, therefore, be in bad faith or objectively baseless. *Id.*

## II. SIGNET'S EVIDENCE IN SUPPORT OF ITS COMMON LAW UNFAIR COMPETITION CLAIM

Signet did not present to the jury any evidence unique to its common law unfair competition counterclaim. That is, Signet's evidence in support of this claim was identical to that presented in support of its Lanham Act claim and in support of its interference claim, both of which were rejected by the jury.[1]

In its Second Amended Counterclaims [Doc. No. 49, ¶ 38], Signet cited the following evidence to support Count V for "Unfair Competition Under Cal. Bus. & Prof. §§ 17200 et seq. and Common Law":

> Zeiss Vision's false and misleading statements made to Signet Armorlite's existing and/or prospective customers and optical laboratories … to the effect that the Kodak Unique lenses are coming off the market or are unavailable and that such lenses and/or processes for making such lenses have all the elements recited in the '713 patent claims when the Kodak Unique lenses and/or production processes do not have one or more of those claimed elements or their equivalents and/or that such lenses and/or their production process infringe the '713 patent when they do not infringe."

Signet's Memorandum of Contentions of Law and Fact [Doc No. 646], sets forth under one heading, "Unfair Competition," the facts supporting not only California statutory and common law unfair competition, but also federal unfair competition:

> Signet Armorlite's counterclaims for federal unfair competition (Count IV) and unfair competition under common law and Business & Professions Code §17200 (Count V) are grounded in the fact that [Zeiss] deliberately made false and misleading statements to Signet Armorlite's existing or prospective customers and to the public. Those false statements included that: (1) Carl Zeiss Vision, Inc. and Carl Zeiss Vision International GmbH owned [the '713 patent] and had standing to sue Signet Armorlite for infringement of it, and that Signet Armorlite had infringed that patent or had misappropriated Zeiss' technology, and (2) Signet Armorlite's Kodak Unique lenses were coming off the market or would be unavailable.

---

[1] This is also the same evidence that Signet offers in support of its California § 17200 *statutory* unfair competition claim, on which Zeiss also seeks judgment in a separate motion filed with the Court.

[Doc. No. 646, p. 96.]

At trial, Signet attempted to prove all of its competition-related counterclaims with the same evidence -- statements made by Zeiss to "the industry" generally and statements made by Zeiss to particular customers. The evidence of statements by Zeiss to "the industry" generally was the single page, four paragraph press release issued on May 17, 2007, the day the initial complaint was filed in this action, which was posted soon thereafter on two Internet sites associated with the optical industry. *See* Exhibits 1213 and 1215. The press release was also the genesis of an article published about one month later in a trade publication called "Vision Monday." Exhibit 1214. The article republished three of the paragraphs from the press release, together with three paragraphs reporting Signet's reaction to the lawsuit.

The evidence of statements by Zeiss to particular customers involved VSP, Co-Op Optical, and Littlefield Eye Associates. VSP president Donald Oakley testified by deposition that Fred Howard, president of Carl Zeiss Vision, Inc., told him about the litigation between Zeiss and Signet, commenting, "[t]hat they were going to defend their technology or that it was time to defend their technology." Exhibit 818, Deposition of Donald Oakley, 87:5 - 88:3.

Zeiss employee, Cheryl Vescio, was alleged to have said to Charles Benson of Co-Op Optical, who also testified by deposition, that:

> Just that, obviously, there was going to be some litigation, that Signet Armorlite was producing a design that they -- that they had technology or they were producing in their European operation, and that somehow potentially maybe Kodak got a hold of that technology and brought it back to the U.S.

Exhibit 817, Deposition of Charles Benson, 109:9-14. Finally, Signet sales representative Michelle Hooper, testified that Anh Huong Suba, of Littlefield Eye Associates, told Hooper that Suba "was told by the Zeiss rep that she was -- that there was a lawsuit going on, that Signet Armorlite was being sued by Zeiss, and that there -- that Unique would be off the market within a year." Exhibit 814A, Deposition of Michelle Hooper, 25:25 - 26:5.

Signet neither claimed nor proved any lost sales from either Co-Op Optical or Littlefield Eye Associates. Signet sought damages from Zeiss for revenue it alleged it would have earned if it had been selected as one of the two participants in VSP's private branding initiative, an opportunity

- 3 -
COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION                                07 CV 0894 DMS (POR)

it claimed it lost because of the filing of this lawsuit. Signet also sought damages for its failure to reach its sales projections, adjusted upward by its expert Michael J. Hosfield, for the two year time period from January 1, 2008 to December 31, 2009.

## III.   ARGUMENT

### A.   The Jury's Verdicts for Zeiss on Signet's Congruent Business Tort Causes of Action Impel a Judgment for Zeiss on Signet's Common Law Unfair Competition Claims

#### 1.   California Common Law Claims of Unfair Competition Are Substantially Congruent to Lanham Act Claims

Although not without controversy, California courts that take an expansive view of the ambit of the California common law of unfair competition agree that it is substantially congruent with a cause of action for unfair competition under the Lanham Act. *See, Cleary v. New Corp.,* 30 F.3d 1255, 1262-63 (9th Cir. 1994):   "This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." [2]

The first element of the Lanham Act and common law unfair competition claims is a false or misleading statement of fact about Signet's product or an assertion of bad faith that Signet infringed the '713 patent. Doc. No. 882 at Instructions 3.0 and 4.1. The next two elements of the Lanham Act claim -- that Zeiss' conduct deceived or had a tendency to deceive and was material, in that it did or was likely to influence someone's buying decision -- are the same as the second element of the common law unfair competition claim, that the statement or bad faith assertion of patent infringement influenced someone's decision to do business with Signet. *Id.*  Finally, both causes of

---

[2] While the California Supreme Court and the Ninth Circuit have narrowly defined California common law of unfair competition to include only "passing off" one's goods as those of another and acts analogous to "passing off" such as the sale of confusingly similar products, *see, Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263, 833 P.2d 545 (1992); and *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008), other California state courts and panels of the Ninth Circuit take a more expansive view. *See U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 618, 81 Cal. Rptr. 2d 708, 714 (Ct. App., 1st Dist. 1999); and *Cleary,* 30 F.3d at 1262-63.

action require injury or in the case of the Lanham Act, a lesser requirement of likelihood of injury.[3] *Id.*

**2. As a Matter of Law, Signet's Common Law Unfair Competition Claim Falls With Its Other Business Tort Claims**

The Court charged the jury that for Signet to succeed on its claim for common law unfair competition, Signet must prove:

(a) The Zeiss parties either (1) made a statement that was false and intentionally disparaging of Signet's Kodak Unique lenses or (2) asserted in "bad faith" that Signet infringed the '713 patent;

(b) The statement or bad faith assertion of patent infringement influenced someone's decision to do business with Signet; and

(c) The statement or bad faith assertion of patent infringement caused injury to Signet.

Doc. No. 882 at Instruction 3.0. (Emphasis added.)

Because the jury found against Signet on its causes of action for Lanham Act unfair competition and for intentional interference with prospective economic advantage, the Court should enter judgment in Zeiss' favor on Signet's common law unfair competition claim:

- By its verdict adverse to Signet on the claim of intentional interference with prospective economic advantage, the jury concluded that none of Zeiss' alleged statements to VSP,[4] were actionable. As a matter of law, Signet ought not be allowed to recast the same allegation as one for common law unfair competition. Signet is entitled to but one failure of proof.

---

3 The Lanham Act also requires an action in interstate commerce. The existence of this element was undisputed at trial and thus could not have served as the basis for the jury's verdicts.

4 Signet limited its proof at trial to alleged harm to its relationship with VSP.

- By its verdict adverse to Signet on its Lanham Act claim, the jury concluded that no Zeiss statement to "the industry" was actionable. Again, Signet should not be allowed to argue to a different jury what one jury has already found did not occur.

Signet's attempt to re-posture its common law unfair competition claim as a claim for trade libel[5] fails for the same reasons: a customer has to be influenced by a Zeiss statement or assertion and specific customers must be proven lost. *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964) (Proof of loss of specific sales required). The jury's rejection of Signet's claim of intentional interference with its prospective economic advantage with VSP dooms Signet's trade libel claim.

Unfair competition requires bad faith, influencing a customer or potential customer, and injury. Signet has produced no evidence of any of these elements. The jury verdicts that rejected Signet's Lanham Act and intentional interference claims demonstrate a failure of proof in Signet's trial evidence of such bad faith, influence and/or injury. Any one of these deficits is fatal to Signet's common law unfair competition claim. Therefore, Signet's proofs failed for at least one element of its common law unfair competition cause of action, and Zeiss is entitled to judgment on that cause of action.

**B.     Signet Did Not Prove that Zeiss Asserted in "Bad Faith" that Signet Infringed the '713 Patent.**

In the context of unfair competition claims made under California common law and Calif. § 17200, the Federal Circuit noted that Federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the party claiming unfair competition shows the patentholder acted in bad faith. *See Dominant Semiconductor Sdn. Bdh. v. Osram GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). As a matter of federal patent policy, a patentee must be allowed to

---

[5] "Signet's common law unfair competition claim is related to the law regarding trade libel, which, under California law, includes injurious falsehoods directed at a business or its products." Doc. No. 813, p. 44.

- 6 -
COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION                                                       07 CV 0894 DMS (POR)

make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction. *Id*. Signet had to show Zeiss "had no reasonable basis to believe that the [accused infringing device] infringed . . . ." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (emphasis added). Even if patent infringement is erroneously claimed, there is no unfair competition if there is no bad faith. *Falcon Lock Co. v. Best Universal Lock Co.*, 362 F.2d 221, 223 (9th Cir. 1966).

Signet did not present evidence from which a jury can conclude that Zeiss made any actionable statements in bad faith. Signet's only allegations of bad faith pertain to Zeiss' assertions set forth in the May 17, 2007 press release, republished on the Internet and in Vision Monday. Signet must prove that these assertions that were made by Zeiss in bad faith. Instead, Signet argued that it is the implied assertion of standing by the two Zeiss plaintiffs which originally brought this action in May 2007 that was made in bad faith. Yet, there is no evidence that the two original Zeiss plaintiffs initiated or publicized the lawsuit with a bad faith belief that they did not have standing.

### C. Zeiss Has *Noerr-Pennington* Immunity Because Signet Has Not Established Zeiss' Claims Were Objectively Baseless

To overcome Zeiss' *Noerr-Pennington* immunity, Signet must demonstrate "[f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S. Ct. 1920 (1993) ("*PRE II*"). The standard for objective baselessness is whether the patent is "obviously invalid or plainly not infringed." *Globetrotter*, 362 F.3d at 1375.

In this patent case, as a matter of law there is no evidence that any Zeiss entity sued Signet despite the '713 patent being "obviously invalid or plainly not infringed." *Id*. Given that Zeiss' patent infringement case survived Signet's motions for summary judgment and a jury trial, Zeiss' patent infringement case cannot be objectively baseless, and the Court must enter judgment for Zeiss. *See, e.g., Vae Nortrak North America, Inc. v. Progress Rail Servs. Corp.,* 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006) (finding *Noerr-Pennington* immunity applied where "litigation has

- 7 -
COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

been active for over three years and has survived a *Markman* hearing and summary judgment); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) (prior lawsuit that survived summary judgment motions could not be considered sham litigation for *Noerr-Pennington* purposes); *Harris Custom Builders, Inc. v. Hoffmeyer,* 834 F. Supp. 256, 261-62 (N.D. Ill. 1993) (finding infringement action not sham because it survived summary judgment).

Further, as detailed in Zeiss' co-pending motion for a judgment as a matter of law that claim 6 is literally infringed, Signet presented no cognizable evidence that contradicts Zeiss' evidence of literal infringement of claim 6 by the process used to make Kodak Unique lenses and virtually admitted infringement. The Court will recall, Signet was relegated to arguing that 3 to 5 radii are too few to be a "few." Whether or not Zeiss' motion is granted, the infringement contention as to claim 6 clearly has substance. As a matter of law, Signet can not establish the requisite objective baselessness of Zeiss' infringement case.

**D. Standing Defects Do Not Render the Infringement Claims Against Signet Objectively Baseless**

At trial, Signet focused on the standing defects in Zeiss' first Complaints. As a matter of law, these standing defects do not render the infringement claim to be objectively baseless or in bad faith. Nor do they render Zeiss' statement of the existence of patent rights false. At all times since the filing of the first Complaint in May 2007, a Zeiss company owned the '713 patent. Patent infringement is a continuing tort, *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221-22 (Fed. Cir. 1995); and *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed. Cir. 1992), and Zeiss' claim against Signet is not subject to any applicable statute of limitations. Signet began making Kodak Unique lenses before the first suit and has continued to do so ever since. To succeed with a patent infringement claim, Zeiss need only prove that one claim of the '713 patent was infringed by the making of Kodak Unique lenses. Signet repeatedly requested judgment on its non-infringement and invalidity assertions. All were denied. Thus, at a minimum, Zeiss presented a genuine issue of material fact as to the merits of its patent case.

Thus, there existed, at all relevant times, an infringement claim against Signet based on the '713 patent and the making of Kodak Unique lenses. As a matter of undisputed fact and of law, Zeiss' infringement allegations are not objectively baseless.

There is no evidence in the record that this infringement action was brought to interfere directly with Signet's business, rather than to win. The law as enunciated in *PRE II* requires proof of subjective bad faith, as well as objective bad faith, and Signet cannot avoid the consequences of its failure to meet this requirement.

Signet cannot fill this gap in proof with Zeiss' so-called litigation misconduct. First of all, there is no support in case law for litigation misconduct to be used to prove the bad faith required by the Federal Circuit to avoid preemption of state law tort claims by patent law. The law relied on by Signet in support of this argument relates only to *Noerr-Pennington* immunity. Second of all, the kind of litigation misconduct that Signet points to is not the kind of litigation misconduct which is relevant to *Noerr-Pennington*, that is, "knowing fraud upon, or intentional misrepresentations to, the court," that "deprive[s] the litigation of its legitimacy." *Kottle v. Northwest Kidney Ctrs.,* 146 F.3d 1056, 1060 (9th Cir. 1998). For the litigation to be baseless, the fraud must have been such that it deprived the litigation of legitimacy.

Signet did not provide the evidence required to allow a jury to find that this action -- which in all material respects is the same action that was filed over three years ago in May, 2007 -- was brought in bad faith or was a sham. Zeiss is entitled to a judgment as a matter of law on Signet's claim of common law unfair competition because Zeiss has *Noerr-Pennington* immunity from this claim.

The Court correctly charged the jury that the only way it could find bad faith would be to find, first, that the lawsuit was objectively baseless, that is, that "no reasonable person could reasonably expect success on the merits." Doc. No. 882, Instruction No. 3.0. In the context of *Noerr-Pennington* immunity, the Court stated, "A lawsuit is objectively baseless only if no reasonable litigant could realistically expect to win." *Id.* at Instruction No. 5.0. Signet's argument seeks to amend the Court's two instructions to state a lawsuit is objectively baseless if "no

- 9 -

COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

reasonable person *without standing* could reasonably expect success on the merits" and "only if no reasonable litigant *without standing* could realistically expect to win." Signet's approach impermissibly revises the U.S. Supreme Court's formulation of the test to be applied to determine whether a lawsuit is objectively baseless by failing to focus on the substantive merits of the claim.

To overcome *Noerr-Pennington* immunity, the Supreme Court instructs: "[f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE II,* 508 U.S. 49, 113 S. Ct. 1920. As a matter of law there is no evidence that any Zeiss entity sued Signet despite the '713 patent being "obviously invalid or plainly not infringed." *Globetrotter,* 362 F.3d at 1375.

By necessity, Signet transforms the test for determining whether a lawsuit is objectively baseless from whether any reasonable litigant could expect success on the merits into whether Zeiss International and Zeiss, Inc. could have expected success on the merits. Yet even here, Signet offered no evidence that any Zeiss plaintiff in any complaint filed during this litigation knew that it lacked standing under U.S. patent law and participated in this case in bad faith. Zeiss International reasonably expected success on the merits given the state of Zeiss' infringement case today. Given that Zeiss International reasonably expected success on the merits of its infringement case, this litigation cannot be said to be objectively baseless, even where its co-plaintiff was dismissed. Every time a plaintiff is dismissed as a party because of a lack of standing is not as a matter of law the result of bad faith litigation. Here, the underlying patent infringement case is not objectively baseless and that case is being prosecuted by the dismissed party's parent. No case supports the result that bad faith litigation inexorably flows from the dismissal of another Zeiss entity from this case as a result of a lack of standing.

Signet cites but one case in support of its argument that a litigant found without standing, *ipso facto*, has engaged in bad faith litigation, *In re Burlington Northern, Inc.*, 822 F.2d 518 (5th Cir. 1987). *Burlington* is bad law. It was decided six years prior to the Supreme Court's decision in *PRE II*. The Ninth Circuit decision which the Supreme Court affirmed in *PRE II* specifically noted its disagreement with *In re Burlington* and contrasted it with the test it then employed to determine

- 10 -

COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

whether litigation was entitled to *Noerr-Pennington* immunity, which the Supreme Court essentially adopted in *PRE II*. *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1530-31 (9th Cir. 1991). Indeed, some cases have noted that *Burlington* was "probably" overruled. *See Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001); *Village Supermarket, Inc. v. Mayfair Supermarkets, Inc.*, 634 A.2d 1381 (N.J. Super. 1993).

The Court implicitly recognized the legitimacy of the patent claim when it dismissed the May 17, 2007 lawsuit *without prejudice*. Further, the Amended Complaint was dismissed *not* because the then plaintiffs did not have standing, but as a discovery sanction. The Court did order Zeiss to pay Signet's legal fees incurred as an additional discovery sanction. But never did the Court find that the assertion of standing or of patent infringement to have occurred in bad faith. The Court again implicitly acknowledged these conclusions by dismissing the Amended Complaint without prejudice and trying the refiled case.

**E. Signet Did Not Prove Any Allegedly Unfair Business Conduct of Zeiss Caused Any Harm to Signet**

Tort liability requires proof of injury and causation. This is a requirement of the tort of unfair competition as recognized in the jury instruction. Doc. No. 882, Instruction No. 3.0. Signet contends its unfair competition claim is related to trade libel, but that does not circumvent the injury/causation requirement. Trade libel requires proof of the loss of specific customers. *See Erlich*, 224 Cal. App. 2d at 73 ("It is nearly always held that it is not enough to show a general decline in his business resulting from the falsehood, even where no other cause for it is apparent, and that it is only the loss of specific sales that can be recovered.").

Signet referred to alleged unfair competition with respect to only three customers: Co-Op Optical, Littlefield Eye Associates and VSP. However, as to the first two, Signet neither claimed nor proved any lost sales. As to VSP, Signet claimed it was rejected as a participant in VSP's private branding initiative. This is an allegation of loss of prospective business advantage, and, in fact, the only lost prospective business advantage addressed by Signet. The jury's rejection of

- 11 -

COUNTERCLAIM-DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) ON SIGNET'S CLAIM FOR CALIFORNIA COMMON LAW UNFAIR COMPETITION 07 CV 0894 DMS (POR)

Signet's interference with prospective business advantage counterclaim is a rejection of this source of damages.

Signet cannot even prove a general decline of its sales as a result of Zeiss' actions. It has proved only that: (1) in the several months after this lawsuit was filed and publicized that its sales went up; (2) at about the same time as the recession began, its sales, overall, leveled off; and (3) *if its projections are adjusted upward*, it did not thereafter meet its projected sales. As a matter of law, this proof falls short of proof that Zeiss' conduct "influenced *someone's* decision to do business with Signet."

Missing too is proof that what caused this someone to decide not to buy Kodak Unique lenses was something done by Zeiss – that is, proof that any harm to Signet was the proximate result of Zeiss' actions. To prove that the cause of Signet's failure to meet its projections was something done by Zeiss, Signet must disprove other equally plausible causes were at work. *See Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235, 68 Cal. Rptr. 2d 31 (1997) (because patrons of gaming club may have lost even if club had not allowed cheating to occur, plaintiffs' damages "fatally deficient in the necessary element of causation of damage."). Such equally plausible causes include (but are certainly not limited to) the recession, the introduction into the marketplace at about the time Signet's sales plateaued of several competing products, and that Signet's projections -- all of which were made after the litigation -- were self-servingly high. There is no evidence in the record to discount any of these reasons for the general harm espoused by Signet.

At base, Signet's alleged failure to meet its sales projections is linked to Zeiss' conduct by no other fact than that it occurred after Zeiss' conduct. But nearer in time to the assertion of patent infringement made with the filing of the lawsuit and the issuance of the press release was an *increase* in sales. Presumably because of this increase, Signet did not seek damages for a failure to meet its projections until January 2008, seven months after the filing of the lawsuit. If Signet's sales went up after the lawsuit was filed and the press release issued, there is no causal link between a leveling off of sales seven months later and the lawsuit and press release, absent specific evidence

linking these two events. No such evidence was presented and Signet cannot rely merely on the passage of time. *See Franklin v. Dynamic Details, Inc.,* 116 Cal. App. 4th 375, 393-94 (2004) ("A cause and effect relationship based upon such a temporal sequence is a classic example of the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this.'").

Thus, Zeiss is, therefore, further entitled to judgment as a matter of law on Signet's common law unfair competition claim for its failure to prove a causal connection between any conduct of Zeiss and a business injury.

## IV. CONCLUSION

As argued above, this Court should enter judgment as a matter of law in favor of Zeiss on Signet's counterclaim for California common law unfair competition. No jury has a legally sufficient evidentiary basis to find for Signet on this remaining claim of unfair competition. Zeiss therefore asks this Court to grant this renewed motion under Fed. R. Civ. P. 50(b) for judgment as a matter of law on Signet's counterclaim for California common law unfair competition and to find that Zeiss' patent infringement lawsuit was not objectively baseless and that Zeiss' lawsuit was filed to obtain relief from Signet's infringement.

DATED: July 13, 2010

BUCHANAN INGERSOLL & ROONEY LLP

/s/ Robert K. Edmunds

By: ROBERT K. EDMUNDS

BUCHANAN INGERSOLL & ROONEY PC
SAMUEL BRAVER
SUSAN YOHE
S. LLOYD SMITH

WILEY REIN LLP
ERIC WEISBLATT

Attorneys for Plaintiffs and Counter-Defendants, CARL ZEISS INTERNATIONAL GMBH, CARL ZEISS VISION GMBH, CARL ZEISS VISION, INC., CARL ZEISS STIFTUNG and CARL ZEISS AG