UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ZEISS VISION INTERNATIONAL GMBH and CARL ZEISS VISION INC.,,<br><br>   Plaintiffs,<br>vs.<br><br>SIGNET ARMORLITE, INC.,<br><br>   Defendant.<br>_____<br>AND ALL RELATED COUNTERCLAIMS. | CASE NO. 07cv0894 DMS (POR)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**<br><br>**[Docket Nos. 1253, 1260]** |

This matter comes before the Court on the parties' cross-motions for summary judgment on the issue of inequitable conduct. For the reasons set out below, the Court grants Plaintiff's motion, and denies Defendant's motion.

**I.**

**PROCEDURAL BACKGROUND**

This case is on the verge of a third jury trial, this time limited to the issue of the validity of certain claims of the '713 Patent. The first jury found Signet did not infringe certain of the claims of the '713 Patent, certain of the claims were not invalid, and that Zeiss did not engage in unfair competition under the Lanham Act or intentional interference with prospective advantage. On post-

trial motions, the Court granted Zeiss's motion for judgment as a matter of law that the '713 Patent was not invalid for improper inventorship, granted in part Zeiss's motion for judgment as a matter of law on Signet's counterclaim for unfair competition under California common law, and issued findings of fact and conclusions of law rejecting Signet's equitable estoppel defense.

The second jury found Signet willfully infringed the remaining claims of the '713 Patent, certain claims of the '713 Patent were invalid as anticipated, obvious and not enabled, and awarded Zeiss $684,964 in damages. On post-trial motions, the Court granted Zeiss's motion for judgment as a matter of law that claim 7 of the '713 Patent was not invalid for lack of enablement. The Court also found there was an irreconcilable inconsistency in the jury's findings on anticipation and obviousness, which warranted a new trial on those issues. The retrial of those issues is scheduled for February 6, 2012, with a bench trial to follow on any remaining equitable issues.

One of those equitable issues is inequitable conduct. Prior to the first trial, the parties filed motions for summary judgment on this issue, which the Court denied on the ground there were genuine issues of material fact. Since that time, the Federal Circuit has modified the standards for inequitable conduct. *See Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*). In light of that decision, the parties requested an opportunity to re-brief the issue. The Court granted that request, prompting the filing of the present motions.

## II.

## FACTUAL BACKGROUND

In early 1996, Albrecht Hof and Adalbert Hanssen were employees of Zeiss. At that time, they prepared a Notification of Invention ("NOI") and submitted it to the manager of Zeiss's mathematics department for lens optics, Hans Lahres. They then submitted their NOI to their in-house patent department, which included Volker Bäckmann[1] and Klaus Gnatzig. On January 16, 1997, Gnatzig filed an application for a patent on Hof and Hanssen's invention in the German Patent Office.

One year later, Hof and Hanssen applied to the United States Patent and Trademark Office ("PTO") for a U.S. Patent on their invention. (Decl. of Joseph Arand in Supp. of Signet's Mot. ("Arand Decl."), TX 1005 at 95.) In the application, Hof and Hanssen claimed priority benefits to the

---

[1] Mr. Bäckmann passed away in 1998.

- 2 -                                                                                                           07cv0894

German Patent application, which was assigned number 197 01 312. (*Id.* at 157.) The application for the U.S. Patent, and the later issued '713 Patent, included a number of figures. Two of those figures, Figures 4a and 4b, were prepared by Helmut Wietschorke. Wietschorke also contributed some data contained in the application and the subsequently issued '713 Patent. Scott J. Sugarman was the primary examiner assigned to the application for the '713 Patent, which issued on July 18, 2000.

During prosecution of the application for the '713 Patent, Hof and Hanssen disclosed several prior art references to the PTO, including United States Patents Number 5,444,503 ("the '503 Patent"), 3,722,986 ("the '986 Patent"), and 4,606,622 ("the '622 Patent"). (*See* Arand Decl., TX 1008 at 186.) The '503 Patent is directed to a spectacle lens, and lists Lahres, Wietschorke and Gerhard Kelch as inventors, and Carl Zeiss Stiftung as assignee. (Arand Decl., Ex. 1022 at 265.) Sugarman was assigned as the primary examiner on the application for the '503 Patent. (*Id.*) The application was filed on March 25, 1993, and the patent issued on August 22, 1995. (*Id.*)

Among the references cited and discussed in the '503 Patent is Great Britain Patent Number 1239620 ("GB '620 Patent"). (*Id.* at 265, 282.) The GB '620 Patent is directed to improvements in or relating to opthalmic astigmatic or toric lenses, and was published on July 21, 1971. (Arand Decl., TX 1014 at 250.)

The '986 Patent is directed to high toric power opthalmic lenses. (Arand Decl., TX 1024 at 286.) The inventor of the '986 Patent is Luc Andre Marcel Tagnon. (*Id.*) The application for the '986 Patent was filed on October 18, 1971, and the patent issued on March 27, 1973. (*Id.*)

The '622 Patent is directed to a multi-focal spectacle lens with a dioptric power varying progressively between different zones of vision. (Arand Decl., TX 1438 at 709.) Lahres and Gerhard Fuërter are the inventors of the '622 Patent, and Carl Zeiss Stiftung is the assignee. (*Id.*) Sugarman was the assistant examiner on the application for the '622 Patent. (*Id.*) The application was filed on January 13, 1984, and the patent issued on August 19, 1986. (*Id.*)

Despite disclosure of these references, Signet alleges Zeiss committed inequitable conduct during prosecution of the '713 Patent application by failing to disclose the following references to the PTO: United States Patents Number 6,523,443 ("the '443 Patent"), 5,485,771 ("the '771 Patent"), 4,613,217 ("the '217 Patent"), 3,711,191 ("the '191 Patent"), and European Patent Application

1 Number 0 027 339 ("the EP '339 Patent"). The '443 Patent is directed to a process for manufacturing optical surfaces and a shaping machine for carrying out this process. (Arand Decl., TX 1006 at 106.) Hof and Klaus Mehlkopp are the inventors of the '443 Patent, and Carl Zeiss Stiftung is among the assignees. (*Id.*) The application for the '443 Patent was filed on December 30, 1998, and the patent issued on February 25, 2003. (*Id.*)

The '217 Patent is directed to a spectacle lens having astigmatic power. (Arand Decl., TX 1437 at 696.) Lahres and Fuërter are the inventors of the '217 Patent, and Carl Zeiss Stiftung is one of the assignees. (*Id.*) The application for the '217 Patent was filed on January 25, 1984, and the patent issued on September 23, 1986. (*Id.*) Sugarman was the assistant examiner on the '217 Patent. (*Id.*)

The '191 Patent is directed to aberration corrected opthalmic progressive power lenses. (Arand Decl., TX 1436 at 676.) Tagnon is the inventor of the '191 Patent. (*Id.*) The application for the '191 Patent was filed on September 16, 1971, and the patent issued on January 16, 1973. (*Id.*)

The EP '339 Patent is directed to progressive power opthalmic lenses. (Arand Decl., TX 1340 at 596.) The inventor of the EP '339 Patent is Peter Roland Wilkinson. (*Id.*) The application for the EP '339 Patent was filed on October 3, 1980, and the patent was published on April 22, 1981. (*Id.*)

In addition to failing to disclose these references, Signet alleges Zeiss failed to disclose other information to the PTO during prosecution of the application for the '713 Patent. Specifically, Signet alleges Zeiss failed to disclose problems with the invention described in the '713 Patent, which problems are evidenced by statements in United States Patent Number 6,709,106 ("the '106 Patent").[2] Signet also alleges it was false and misleading for Zeiss to use the same figures in the '713 Patent and the '106 Patent.

/ / /

/ / /

/ / /

---

[2] The '106 Patent is directed to a method for the manufacture of a spectacle lens, spectacle lens and spectacle lens family. (Arand Decl., TX 1090 at 310.) Kelch and Wietschorke are the inventors of the '106 Patent, and Carl Zeiss Stiftung is the assignee. (*Id.*) The application for the '106 Patent was filed on April 24, 2001, and the patent issued on March 23, 2004. (*Id.*)

# III.

# DISCUSSION

The parties move for summary judgment on the issue of inequitable conduct. Zeiss argues there is insufficient evidence to allow Signet to proceed with this defense, and Signet asserts the evidence is such that it is entitled to judgment in its favor on the issue.

**A.     Summary Judgment**

"Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56(c)). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet this burden, the moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, then the burden shifts to the opposing party to show that summary judgment is not appropriate. *Id.* at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). *See also IPXL*, 430 F.3d at 1380 (quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998)) (stating "'evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent.'") However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

/ / /

/ / /

**B.     Inequitable Conduct**[3]

As mentioned above, during the pendency of this case, the Federal Circuit reassessed the doctrine of inequitable conduct. *See Therasense*, 649 F.3d 1276. In *Therasense*, the court laid out the origins of the doctrine, which involved cases that "dealt with particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Id.* at 1287. The court followed the evolution of the doctrine away from that narrow class of cases to cases involving "a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts, but also the mere nondisclosure of information to the PTO." *Id.* The court also noted the expansion of the remedy to "unenforceability of the entire patent rather than mere dismissal of the instant suit." *Id.*

With this evolution of the doctrine, "inequitable conduct came to require a finding of both intent to deceive and materiality[,]" the standards for which "have fluctuated over time." *Id.* At one point, the court "espoused low standards for meeting the intent requirement, finding it satisfied based on gross negligence, or even negligence." *Id.* at 1287-88. The court "also previously adopted a broad view of materiality, using a 'reasonable examiner' standard based on the PTO's 1977 amendment to Rule 56." *Id.* at 1288. The court explained it "embraced these reduced standards for intent and materiality to foster full disclosure to the PTO." *Id.* The court noted, however, that the focus on full disclosure "had numerous unforeseen and unintended consequences. Most prominently, inequitable conduct has become a significant litigation strategy[,]" which "expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team." *Id.* It also "discourages settlement and deflects attention from the merits of validity and infringement issues[,]" and "'increas[e][s] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost.'" *Id.* (quoting Br. and Appendix

---

[3] The parties dispute whether some of the individuals accused of inequitable conduct were "substantively involved" in the prosecution of the '713 Patent such that they had a duty of candor to the PTO. In light of the Court's finding that there is insufficient evidence that any of the accused individuals had the specific intent to deceive the PTO, the Court does not address whether these individuals were "substantively involved" in the prosecution of the '713 Patent, but rather assumes they were for the purpose of determining the present motion. In light of the Court's finding on specific intent, the Court also declines to address whether Signet has met its burden on the materiality prong of the inequitable conduct inquiry.

of Am. Bar Ass'n as Amicus Curiae at 9). In essence, the court described inequitable conduct as "the 'atomic bomb' of patent law[,]" not only for its effects on litigation, but also because a finding of inequitable conduct "regarding any single claim renders the entire patent unenforceable[,]" *id.* (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988)), and "can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.*

In light of these "far-reaching consequences," the *Therasense* court "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. Under these new standards, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.* (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Gross negligence and negligence no longer suffice. *Id.* Furthermore,

> to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Id.* at 1290-91 (citations omitted). With respect to materiality, the court adjusted that standard to one of:

> but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

*Id.* at 1291-92. In addition, the court made it clear that "[i]ntent and materiality are separate requirements." *Id.* at 1290 (citing *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003)). Thus, district courts should no longer "use a 'sliding scale where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Id.*

In this case, Zeiss argues there is insufficient evidence of specific intent to deceive the PTO, therefore it is entitled to judgment as a matter of law on the issue of inequitable conduct. Signet does not dispute there is no direct evidence of specific intent in this case. Instead, it relies on circumstantial

evidence, and argues "the only logical inference" from this evidence "is one of intentional deception of the USPTO to obtain the patent." (Signet's Mem. of P. & A. in Supp. of Mot. at 24.) The Court addresses these arguments below with respect to each alleged act of inequitable conduct.

The first alleged act of inequitable conduct is the withholding by Hof and Bäckmann[4] of the '443 Patent, and by extension, United States Patent Number 5,485,771 ("the '771 Patent").[5] Signet argues both men withheld these references with the specific intent to deceive the PTO. In support of its showing of specific intent, Signet relies on Hof and Bäckmann's failure to disclose these references.[6] However, "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. Thus, the mere fact that Hof and Bäckmann failed to disclose these references is insufficient to defeat summary judgment in favor of Zeiss. *See Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319-20 (Fed. Cir. 2010) (citations omitted) ("When a party has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case in accordance with the applicable standard of proof, summary judgment is properly granted against that party.")[7]

The second alleged act of inequitable conduct is the withholding by Hof, Hanssen, Lahres, Kelch and Wietschorke of the '217 Patent. As with the '443, '771 and EP '339 Patents, the only

---

[4] Signet also accuses the Zeiss Patent Department of engaging in this act of inequitable conduct. However, only individuals can breach their duty of candor to the PTO "and give rise to a finding of inequitable conduct." *See Avid Identification Systems, Inc. v. Crystal Import Corp.*, 603 F.3d 967, 974 n.1 (Fed. Cir. 2010) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)). Therefore, the Court does not address Signet's allegations against the Zeiss Patent Department.

[5] In considering the application for the '443 Patent, it appears the examiner rejected certain claims as anticipated and obvious in light of the '771 Patent. (Signet's Mem. of P. & A. in Supp. of Mot. at 10.)

[6] Signet also asserts Hof testified falsely about his participation in the prosecution of the '443 Patent, giving rise to questions about his credibility, which is further evidence of his specific intent to deceive the PTO. Credibility questions alone, however, are "insufficient to find specific intent to deceive under the knowing and deliberate standard." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1335 (Fed. Cir. 2011). Accordingly, this evidence does not constitute clear and convincing evidence of specific intent sufficient to defeat summary judgment.

[7] Signet raises a similar argument with respect to the EP '339 Patent, namely that the failure to disclose that reference evidences specific intent to deceive the PTO. For the reasons set out above, the Court rejects that argument.

1  evidence Signet points to in support of a finding of specific intent to deceive the PTO with respect to
2  the '217 Patent is these individuals' failure to disclose the reference to the PTO.  As stated above, the
3  mere failure to disclose a reference does not amount to clear and convincing evidence of specific
4  intent to deceive the PTO.  Accordingly, this evidence is insufficient to withstand summary judgment
5  in favor of Zeiss.

6  The third alleged act of inequitable conduct is the withholding by Hof, Hanssen, Bäckmann,
7  Gnatzig, Lahres, Kelch and Wietschorke of the GB '620 Patent.  In support of a finding that this
8  reference was withheld with the specific intent to deceive the PTO, Signet relies on the failure to
9  disclose the GB '620 Patent coupled with the disclosure to the PTO of two other references, the '503
10 Patent and the '986 Patent.  The problem with Signet's argument, however, is the '503 Patent cites
11 the GB '620 Patent, and explicitly discusses the GB '620 Patent in its specification.  (Arand Decl., TX
12 1022 at 265, 282.)  Under these circumstances, Zeiss asserts the GB '620 Patent was cumulative to
13 the art already before the examiner, therefore evidence of specific intent to deceive the PTO is lacking.
14 At a minimum, there is more than one reasonable inference that may be drawn from the failure to
15 disclose the GB '620 Patent.  While Signet argues for an inference of deceptive intent from the failure
16 to disclose, Zeiss argues it is equally reasonable to infer that the GB '620 Patent was not specifically
17 disclosed because it was cited and discussed in the '503 Patent.  Because "there are multiple
18 reasonable inferences that may be drawn [from this evidence], intent to deceive cannot be found."
19 *Therasense*, 649 F.3d at 1290-91.

20 The fourth alleged act of inequitable conduct is the withholding by Hof, Hanssen, Bäckmann,
21 Gnatzig, Lahres, Kelch and Wietschorke of the '191 Patent.  As with the GB '620 Patent, Signet
22 argues these individuals withheld the '191 Patent with the specific intent to deceive the PTO based
23 on their failure to disclose the '191 Patent coupled with their disclosure of other, less relevant
24 references, specifically the '622 Patent and the '986 Patent.  Zeiss again argues there are equally
25 reasonable inferences to be drawn from this evidence, namely that the individuals did not disclose the
26 '191 Patent because they believed it was cumulative to the art already before the examiner.  Given the
27 totality of the art that was cited in the '713 Patent, there is more than one reasonable inference that
28 / / /

1  may be drawn from the failure to disclose the '191 Patent to the examiner. Accordingly, the evidence
2  is insufficient to withstand summary judgment in favor of Zeiss.

3  The next alleged act of inequitable conduct is the withholding by Kelch and Wietschorke of
4  certain problems with the invention described in the '713 Patent. Specifically, Signet accuses Kelch
5  and Wietschorke of failing to disclose that the lenses described in the '713 Patent "result in
6  excessively thick spectacle lenses and the imaging quality of the spectacle lenses is in need of
7  improvement." (Arand Decl., TX 1090 at 324.) Signet argues Kelch and Wietschorke failed to
8  disclose this information with the specific intent to deceive the PTO based on their conduct in
9  connection with the '106 Patent. (Signet's Mem. of P. & A. in Supp. of Mot. at 22.) Notably absent
10 from Signet's briefs, however, is any authority that allows for consideration of conduct in prosecuting
11 one patent as evidence of inequitable conduct with respect to another patent. In the absence of such
12 authority, Kelch and Wietschorke's conduct during prosecution of the application resulting in the '106
13 Patent cannot serve as evidence of specific intent to deceive the PTO during prosecution of the '713
14 Patent.

15 The only other alleged instance of inequitable conduct is that it was false and misleading for
16 Wietschorke to use the same figures in the '713 Patent and the '106 Patent. Signet asserts the
17 drawings represent one thing in the '713 Patent and something different in the '106 Patent, which
18 evidences intent to deceive the PTO. It is unclear from the evidence whether these drawings are meant
19 to represent entirely different things or simply different sides of the same coin. On their face, the
20 drawings appear to be the same, and the description of the drawings is similar, but Wietschorke
21 testified that the information contained in the drawings is not necessarily identical because the
22 drawings "refer to different lenses." (Arand Decl., Ex. F at 1057.) Whatever the drawings represent,
23 and assuming they represent different information, this evidence does not rise to the level of clear and
24 convincing evidence of specific intent to deceive the PTO. In the absence thereof, Zeiss is entitled
25 to summary judgment of no inequitable conduct.
26 / / /
27 / / /
28 / / /

## IV.

## CONCLUSION AND ORDER

For all the foregoing reasons, the Court grants Zeiss's motion for summary judgment of no inequitable conduct and denies Signet's motion for summary judgment of inequitable conduct.

**IT IS SO ORDERED**.

DATED: December 19, 2011

_____
HON. DANA M. SABRAW
United States District Judge